## JAMES THOMPSON

*v.*

## FREDERICK BULSON.

1. FENCES—*notice must be given of the selection of viewers, to charge party in default with costs.* If one of the owners of a division fence shall neglect to keep his portion in repair, the other owner can not, without notice to him, select both fence viewers, and charge him with all the costs of the view. The party not notified will not be bound by the action of the viewers, and therefore will not be liable for any expenses on their account.

2. CONSTRUCTION OF STATUTES. A section of a statute will be construed with reference to the provisions of other sections relating to the same subject, and so as to leave all the words in the different sections in full effect according to their ordinary and usually accepted meaning.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was a suit brought by Frederick Bulson against James Thompson, to recover for the expenses paid by the plaintiff to fence viewers.

It appears from the record that the plaintiff made the following complaint to two fence viewers of his town:

"In compliance with a statutory act, approved March 21, 1874, in force July 1, 1874, I hereby enter complaint, that that part of a division fence between the lands of James Thompson and my own that has, according to law, been

assigned to said James Thompson to build and keep in repair, is insufficient, and I hereby demand that the proper legal steps be immediately taken to secure the rebuilding of said line fence. Said division fence is described as follows," etc.

"[Signed]          FREDERICK BULSON."

The fence viewers caused the following notice to be served upon the defendant:

"*To James Thompson:*

"You are hereby notified that complaint having been made by Frederick Bulson to the undersigned, fence viewers of the town of Victoria, in Knox county, and State of Illinois, that you have neglected to repair and rebuild your part of the division fence on the line between your land and said Bulson's land, your part being (giving a description of the fence), we shall meet on the 24th day of October, 1874, at the hour of ten o'clock A. M., and proceed and examine said fence, with a view to such action in the premises as the case shall require.

"Dated October 13, 1874.

"D. H. GOODSPEED,
"R. J. WILBUR,
"*Fence viewers.*"

The fence viewers met at the time named in the notice, and decided that Thompson should repair his part of the fence, and caused a notice of their decision to be served on him. The plaintiff also served a written notice on the defendant to repair his fence within ten days. The plaintiff paid the fence viewers and the constable their charges, and brought this suit to recover the same of the defendant.

The cause was tried by the court without a jury, who rendered judgment against the defendant for $11.70, and the defendant appealed.

Messrs. HANNAMAN & WILLOUGHBY, for the appellant.

Mr. HOMER GAINES, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question here is, if one of the owners of a division fence shall neglect to keep his portion of the fence in repair, can the other owner, under the provisions of chap. 54, R. L. 1874, entitled "Fences," without previous notice to him, select both fence viewers, and charge him with all the costs of the view?

A brief reference to several sections of the statute will, in our opinion, furnish an answer. It provides—

By section one: In counties under township organization, the town assessor and commissioners of highways are *ex officio* fence viewers in their respective towns. In counties not under township organization, the county board appoints three fence viewers for each precinct.

By section five: The value of the division fence, and the proportion thereof to be paid by the person availing of it, when it has been built by another, and the proportion to be made and maintained by each, when adjacent owners inclose their lands, shall be determined by two fence viewers.

By section six, upon which appellee bases his claim: "If any person neglect to repair or rebuild a division fence, or portion thereof which he ought to maintain, any two fence viewers of the town or precinct shall, on complaint of the party aggrieved, after giving due notice to each party, examine such fences, and if they deem the same to be insufficient, they shall so notify the delinquent party, and direct him to rebuild the same within such time as they may deem reasonable."

By section seven: "If disputes arise between the owners of adjoining lands, concerning the proportion of fence to be made or maintained by either of them, such dispute shall be settled by any two of the fence viewers of the town or precinct, as the case may be," etc.

By section eight: "When any of the above mentioned

matters shall be submitted to fence viewers, each party shall choose one; and if either neglect, after eight days' notice in writing, to make such choice, the other party may select both."

The language of this section seems to us clearly to embrace the cases specified in each of the preceding sections, wherein the selection of viewers is contemplated, and there is, to our apprehension, no reason why we should attempt to give the words a strained and unusual construction to sustain a contrary view.

The words, " any two fence viewers of the town or precinct shall, on complaint of the party aggrieved," etc., in the sixth section, which, taken by itself, might seem to indicate the right of the complaining party to select the viewers, are to be considered with reference to the other portions of the statute relating to the same subject, and when this is done, it is plain their meaning will be correctly expressed thus: "Any two fence viewers of the town or precinct, when selected as provided by section eight, shall, on complaint of the party aggrieved," etc. This does no violence to the language employed; it merely supplies what is understood, and it leaves all the words in the different sections in full effect, according to their ordinary and usually accepted meaning.

Moreover, it is indispensable to the effectiveness of a tribunal of this description, that some mode of reaching a decision shall be provided when the two viewers are unable to agree. This is provided alone by the ninth section, the language of which, in so many words, shows the viewers are, in the first instance, to be selected as provided by the eighth section. It is: " The two fence viewers *so chosen* shall examine the premises and hear the allegations of the parties. In case of their disagreement, they shall select another fence viewer to act with them, and the decision of any two of them shall be final to the parties to such dispute, and upon all parties holding under them."

We are unwilling to believe that it was the design of the

legislature, in providing that controversies in regard to fences shall be decided by a less number than all the viewers of the town or precinct, the party complained of shall be denied the right of participating in the selection of those to whom the controversy is to be submitted, when it relates to repairing fences, but allowed the right when the controversy relates to the portion of the fence to be made and maintained by the respective parties. Such a distinction is unreasonable, and it would work manifest injustice to the party complained of in regard to repairing fences. If such had been the design, it would surely have been expressed in language far different from that we have considered, and so clearly as to leave no excuse for construction.

Our conclusion is, since the viewers were selected without previous notice to appellant, and by appellee only, appellant is in nowise bound by their action, and, consequently, liable for no expenses on their account.

The judgment is reversed.

*Judgment reversed.*