## People of the State of Illinois, Defendant in Error, v. Joseph DeYoung, Plaintiff in Error.

### Gen. No. 40,560.

526

Opinion filed April 15, 1941.

JAMES J. BARBOUR, of Evanston, for plaintiff in error.

OTTO KERNER, Attorney General, for defendant in error; A. B. DENNIS, Assistant Attorney General, THOMAS J. COURTNEY, State's Attorney, EDWARD E.

Wilson, John T. Gallagher, Blair L. Varnes and Melvin S. Rembe, Assistant State's Attorneys, of counsel.

Mr. Justice John J. Sullivan delivered the opinion of the court.

The jury returned a verdict in this case finding the defendant, Joseph DeYoung, guilty of violation of section 24 of the Medical Practice Act (ch. 91, par. 16i, Ill. Rev. Stat. 1937 [Jones Ill. Stats. 79.25]), and the court entered judgment thereon and assessed a fine against him of $125 and $20 costs. This writ of error is brought to review that judgment. In transferring the cause to this court the Supreme Court in *People v. DeYoung*, 369 Ill. 341, held that no new constitutional question was presented.

The information upon which defendant was tried was verified by Charlotte Hermes, an investigator for the Department of Registration and Education of the State of Illinois.

The first count thereof charged that defendant did unlawfully diagnosticate an ailment or supposed ailment of Charlotte Hermes also known as Mrs. Ralph Hermann, as asthma.

The second count charged that he unlawfully treated "the supposed asthma of Charlotte Hermes . . . by applying pressure and manipulating the back, side, vertebra and neck of the said Charlotte Hermes . . . with his fingers and hands."

The third count charged that the defendant did unlawfully "suggest and recommend the manipulation of the back, side, vertebra and neck of the said Charlotte Hermes . . . with his fingers and hands with the intention of receiving a fee of a portion of $5 in cash therefor."

The fourth count charged that Joseph DeYoung, on November 17, 1936, at the village of Thornton, Cook county, Illinois, not then and there possessing an exist-

ing license to practice the treatment of human ailments in any manner, did "unlawfully attach the title Doctor, Physician, Surgeon, M. D., or some other word or abbreviation to his name indicative that he was engaged in the treatment of human ailments as a business, to-wit: . . . did sign his name upon a receipt for $5 in the following manner, to-wit: Joseph DeYoung, D. N., and did distribute pamphlets to members of the public and more particularly to Mrs. Ralph Herman, upon which he had caused or permitted his name to be printed, written or stamped in the following manner: 'Dr. Joseph DeYoung, Naprapathic Physician,' and 'Dr. DeYoung,' and did cause or permit his name to be displayed on the house at 117 Schwab Road, Thornton, Illinois, in the following manner: 'Dr. Jos. DeYoung, Naprapath.' "

The fifth count charged that the defendant unlawfully "did then and there . . . maintain an office in the house at 117 Schwab Road, equipped with a table, chart, equipment and paraphernalia for the treatment of human ailments."

"All in violation of section 24 of an Act to revise the law in relation to the practice of the treatment of human ailments for the better protection of the public health and to prescribe penalties for the violation thereof, and contrary to the statutes in such case made and provided against the peace and dignity of the People of the State of Illinois."

The second count of the information was quashed on defendant's motion and separate verdicts were returned by the jury finding him not guilty as to the first, third and fifth counts. As heretofore stated it was on the fourth count that the jury returned the verdict of guilty, upon which the judgment before us for review was entered.

Charlotte Hermes, an investigator for the Department of Registration and Education of the State of Illinois, went to the home of the defendant on No-

vember 17, 1936. She saw a sign on his front porch, which read: "Dr. Jos. DeYoung, Naprapath." After entering his home she told him she had a bad cold and that she did not know whether it was caused by asthma or hay fever. She asked for and received a naprapathic treatment. She knew what such a treatment was since she had had one before. This is a manipulative treatment or "glorified" massage. She paid $5 to defendant and he gave her a receipt which read, "Received of Mrs. Ralph Hermann [the name she used] five dollars for half course of naprapathic treatments. Joseph DeYoung, D.N." When she left DeYoung's home she took with her three pieces of literature dealing with the value of naprapathic treatments. She testified that DeYoung gave her this literature, advising her to read same so that she might have a clearer understanding of the profession or science of naprapathy. Both DeYoung and his wife testified that the literature was not given to Mrs. Hermes but that she purloined it from their home.

The literature referred to consisted of three pamphlets. The first of these, entitled "The Business of Living," advocates the use of naprapathic treatments for the cure of almost every conceivable human ailment or disease, enumerating them. This statement is contained therein: "Naprapathy is a scientific method of treating diseases, both chronic and acute, without drugs or surgery. Diseases and ailments which are regarded incurable are cured by this wonderful treatment." The name of "W. L. Morrison appears in type on the bottom of one of the pages as the author. At the end of the pamphlet are these printed lines: "I HAVE CURED OTHERS—WHY NOT YOU? Telephone or write for appointment. Consultation without charge." Immediately after the foregoing lines there is written in ink: "Dr. DeYoung, Thornton, Illinois, Tel. 2507."

The second pamphlet is entitled, "Bulletin of the American Naprapathic Association. Vol. XII, Bur-

lington, Iowa, September, 1936. Number 11.'' This bulletin contains articles by various persons as to the efficacy of naprapathic treatments for ''Children's Respiratory Disorders,'' ''Faulty Elimination,'' ''Diseases of the Female,'' ''Repair Changes in Neurasthenia,'' and ''Prostatitis.'' At the top of the front page of the bulletin was stamped: ''Dr. Joseph De-Young, Thorton, Ill.''

The third pamphlet is entitled ''A PERSONAL MESSAGE.'' At the bottom of the first page thereof in small type is the statement, ''Copyrighted 1929 by Chas. R. Cushman.'' At the end of this printed circular appears the following in heavy black type: ''DR. JOSEPH DeYOUNG Naprapathic Physician, Pipestone, Minnesota.'' A black ink line is run through ''Pipestone, Minnesota,'' and ''Thornton, Ill.'' is written thereunder in ink. This pamphlet contains the following, among other questions and answers:

''What diseases are treated by Naprapathy?

''Connective tissue diseases, to answer the question briefly. But speaking of 'diseases' as you know them (we call them sympto'-ras), the following, among others, have been successfully treated: Stomach troubles, headache, hay fever, neuralgia, asthma, bronchitis, liver complaints, kidney and bladder trouble, constipation, enlarged or inflamed tonsils, insomnia, ovarion and womb disorders, lumbago, rheumatism, neuritis, gall-stones, foot troubles, nervousness, influenza, paralysis, troubles of the nose, throat, ears and eyes, including cataract; jaundice, piles, heart troubles, consumption, deafness, prolapsus or falling of the abdominal or pelvic organs, goitre, etc., etc.''

Defendant contends that his motion to quash the fourth count of the information should have been sustained on the ground that it stated no offense in that it failed to charge that he was in fact engaged in treating human ailments. There is no merit in this contention. It is agreed that the word ''indicative'' in that

section of the statute upon which the fourth count was based means to "hint" or to "suggest." The violation charged under the fourth count is not that defendant treated Charlotte Hermes or diagnosed her condition as asthma or maintained an office at 117 Schwab road, Thornton, Illinois, equipped for the treatment of human ailments, but that by attaching to his name one or more of the titles specified in the statute in the manner alleged, he indicated, hinted or suggested that he was engaged in the treatment of human ailments as a business. That portion of section 24 of the Medical Practice Act upon which the fourth count is predicated is clear and definite and distinctly states a crime. It does not contain any declaration of what shall be conclusive evidence of a fact and it does not deny a fair opportunity for rebuttal. This statute provides: "If any person . . . shall attach the title Doctor, Physician . . . to his name, indicative that he is engaged in the treatment of human ailments as a business; and shall not then possess in full force and virtue a valid license issued by the authority of this State to practice the treatment of human ailments in any manner, he shall be guilty of a misdemeanor." This is not a declaration that the mere attaching of the title "Doctor" or any of the other titles enumerated in itself established that the person charged was engaged in the treatment of human ailments as a business, but rather that the title or abbreviation must be attached and used in a manner and under such circumstances as to indicate, hint or suggest that such person is engaged in the treatment of human ailments as a business. The fourth count of the information clearly and specifically informed the defendant of the acts with which he was charged, among which was the distribution of pamphlets "to the members of the public and more particularly to Mrs. Ralph Hermann . . . upon which he had caused or permitted his name to be printed, written or stamped in the following manner: Dr.

Joseph DeYoung, Naprapathic Physician and Dr. De-Young." We think the fourth count stated an offense under the statute and that defendant's motion to quash same was properly overruled.

The next question presented is whether it was shown by the evidence beyond a reasonable doubt that defendant attached to his name the title "Doctor" or "Physician" or the abbreviation "Dr." in such a manner as to indicate that he was engaged in the treatment of human ailments as a business.

There is no requirement in this State that one engaged in the business of administering massage treatments be licensed. Defendant presented evidence to the effect that naprapathy is merely massage of a particular type, that the titles "Doctor" and "Surgeon" may be properly used outside of the field of medicine and that the defendant had a degree as a "Doctor of Naprapathy." But these matters were all beside the question which the jury was called upon to determine under the fourth count. That question was whether the defendant attached to his name any of the titles specified in the statute in such a manner or under such circumstances as to indicate, hint or suggest that he was engaged in the treatment of human ailments as a business.

Eliminating from consideration the sign on defendant's front porch and the receipt given to Mrs. Hermes by DeYoung as possibly not tending to prove the allegations of the fourth count, we turn to the literature heretofore described and set forth in part.

What significance has this literature which Mrs. Hermes took with her from defendant's home? It was clearly a question of fact for the jury to determine whether she was given this literature by defendant or whether she took same from his home surreptitiously and without his knowledge. By its verdict the jury found that he gave it to her. While defendant was not the author of these pamphlets, he placed his stamp of

approval on their contents and adopted the statements contained therein as his own when he wrote "Dr. De-Young, Thornton, Illinois, Tel. 2507," on the booklet entitled "The Business of Living." ᷉ Here he used the abbreviation "Dr." without any qualification whatsoever. As to the pamphlet entitled "Bulletin of the American Naprapathic Association. Vol. XII, Burlington, Iowa, September, 1936. Number 11," there is stamped across the top of the cover page: "Dr. DeYoung, Thornton, Illinois." Again the abbreviation "Dr." is used without qualification. As has been noted the third pamphlet is headed "A Personal Message." At the end thereof there appeared in heavy type: "Dr. Joseph DeYoung, Naprapathic Physician, Pipestone, Minnesota." A black ink line was run through "Pipestone, Minnesota," and "Thornton, Ill." was written thereunder in ink. It will be observed that in this instance the word "Physician" was used. In Webster's New International Dictionary, 2nd Edition, a physician is defined as "a person skilled in physics or the art of healing; one duly authorized to treat diseases, esp. by medicines; a Doctor of Medicine; often distinguished from a surgeon." Defendant as a naprapath had no right under the law to attach the title "Physician" to his name.

From the tenor and contents of these pamphlets as heretofore set forth, it appears conclusively that defendant indicated that he was engaged in the treatment of human ailments as a business. The concluding paragraph of the pamphlet entitled "The Business of Living" states: "Naprapathy is a scientific method of treating diseases, both chronic and acute, without drugs or surgery. Diseases and ailments which are regarded as uncurable are cured by this wonderful treatment." By attaching to his name as written on this printed pamphlet the title "Dr.," defendant not only indicated, hinted and suggested that he was engaged in the treatment of human ailments as a busi-

ness, but he definitely held himself out as being so engaged. The same is true as to the other two pamphlets upon which he attached to his name the title "Physician" and the abbreviation "Dr." In our opinion the offense charged in the fourth count of the information was proven beyond a reasonable doubt.

Defendant complains of the refusal of the trial court to give certain instructions tendered by him and of its modification of another instruction. We have carefully examined these instructions and find that the instruction last above referred to was properly modified and that the other instructions were properly refused. The jury was fully and fairly instructed as to the applicable rules of law.

There is no merit in defendant's contention that the verdict of guilty as to the fourth count of the information is repugnant to the verdicts of not guilty on the other counts and that it is therefore a nullity. The specific charge made against defendant in the fourth count is separate and distinct from the charges made in the other counts and the verdict of guilty as to this count is entirely consistent with his acquittal on the other counts.

This case has been fairly tried and no adequate reason has been presented for disturbing the verdict or judgment. The judgment of the County court is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.