(No. 26435.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH DEYOUNG, Plaintiff in Error.

*Opinion filed November 24, 1941.*

JAMES J. BARBOUR, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

A jury in the county court of Cook county found Joseph DeYoung guilty of violating section 24 of the Medical Practice act (Ill. Rev. Stat. 1941, chap. 91, par. 16i) and he was fined $125 and costs. He sued out a writ of error from this court to review that judgment and contended that section 24 was unconstitutional. We held the case involved no debatable constitutional question and transferred it to the Appellate Court for the First District. (*People* v. *DeYoung*, 369 Ill. 341.) The Appellate Court affirmed the judgment of conviction (309 Ill. App. 525) and defendant has sued out this writ of error for a further review.

Charlotte Hermes, an investigator for the Department of Registration and Education of this State, filed an information against DeYoung on December 3, 1936, in the county court of Cook county. The first count alleged DeYoung unlawfully diagnosticated an ailment or supposed ailment of Charlotte Hermes, also known as Mrs. Ralph Hermann, as asthma. The second count charged he did unlawfully "treat the supposed asthma of Charlotte Hermes * * * by applying pressure and manipulating the back, side, vertebra and neck of the said Charlotte Hermes * * * with his fingers and hands." The third count charged he did unlawfully "suggest and recommend the manipulation of the back, side, vertebra, and neck of the said Charlotte Hermes * * * with his fingers and hands, with the intent of receiving a fee of a portion of $5 in cash therefor." The fourth count alleged he did "unlawfully attach the title Doctor, Physician, Surgeon, M.D., or some other word or abbreviation to his name indicative that he was engaged in the treatment of human ailments as a business, to-wit: Did sign his name upon a receipt for $5 in the following manner, to-wit: 'Joseph DeYoung, D.N.' and did distribute pamphlets to members of the public and more particularly to Charlotte Hermes, also known as Mrs. Ralph Hermann, upon which he had caused or permitted his name to be printed, written or stamped in the following manner, to-wit: 'Dr. Joseph DeYoung, Naprapathic Physician' and 'Dr. DeYoung' and did cause or permit his name to be displayed on a sign on the house at 117 Schwab Road, Thornton, Illinois, in the following manner, to-wit: 'Dr. Joseph DeYoung, Naprapath'." The fifth count charged that DeYoung did unlawfully "maintain an office in the house at 117 Schwab Road, equipped with a table, chart, equipment and paraphernalia for the treatment of human ailments."

On motion of the defendant the second count of the information was quashed. The jury returned a verdict of

not guilty as to the first, third and fifth counts but found DeYoung guilty on the fourth count. Motions for a new trial and in arrest of judgment were overruled.

The investigator, Charlotte Hermes, went to the home of DeYoung in Thornton, Illinois, on November 17, 1936. On his porch was a sign, "Dr. Joseph DeYoung, Naprapath." She entered the house and told DeYoung that her name was Mrs. Ralph Hermann; that she lived in Homewood; that she had a bad head cold; that she did not know whether it was asthma or hay fever, but that she was having difficulty in breathing; that she had heard he had helped the little Howe girl in Chicago who was suffering with asthma. Mrs. Hermes testified that DeYoung told her he had helped the Howe girl, and that she was able to breathe quietly after a treatment. This was not denied by DeYoung, although he did not admit making this statement. Mrs. DeYoung then took Mrs. Hermes into the office and prepared her for a naprapathic treatment. DeYoung examined Mrs. Hermes' back by pressing his fingers along her spine and told her that she did not have much asthma. He gave her a massage treatment. DeYoung then left the office and went into the living room. He was joined a few minutes later by his wife, who came from the kitchen, and by Mrs. Hermes who had been dressing alone in the office. Mrs. Hermes then paid $5 for half a course of naprapathic treatments, and defendant gave her a receipt signed "Joseph DeYoung, D.N." This was admitted in evidence without objection. Mrs. Hermes testified that DeYoung then gave her three pamphlets to read. Both DeYoung and Mrs. DeYoung denied this and testified she purloined them from their home. After Mrs. Hermes had identified People's exhibits Nos. 2, 3, and 4 as the pamphlets that had been given to her, the assistant State's attorney asked if there was any objection to receiving them in evidence. Defendant's counsel replied: "I make a formal objection now." The court did not rule

on this objection then, and no ruling was sought later. Defendant's counsel was asked if he wished to cross-examine on the exhibits and he replied that he would do that later. The assistant State's attorney then stated he would withhold the exhibits until the cross-examination. After the cross-examination, the three exhibits were received in evidence without further objection.

People's exhibit No. 2 is a pamphlet entitled "Bulletin of the American Naprapathic Association. Volume XII, Burlington, Iowa, September, 1936, Number 11." This bulletin contains articles by various persons as to the efficacy of naprapathic treatments for "Children's Respiratory Disorders," "Faulty Elimination," "Diseases of the Female," "Repair Changes in Neurasthenia," and "Prostatitis." At the top of the first page of the pamphlet is stamped, "Dr. Joseph DeYoung, Thornton, Ill." Mrs. DeYoung admitted she passed out a copy of the pamphlet to anyone that wanted one, and said: "We used to get them so many a month."

People's exhibit No. 3 is entitled "The Business of Living" and is copyrighted by W. I. Morrison. It advocates naprapathic treatments for the cure of many different human ailments. On the fourth page of the pamphlet there appear the following statements: "Naprapathy is a scientific method of treating diseases, both chronic and acute, without drugs or surgery. Diseases and ailments which are regarded as incurable are cured by this wonderful treatment." On the last page of this pamphlet Mrs. DeYoung had written in ink, "Dr. DeYoung, Thornton, Illinois. Tel. 2507." Defendant admitted on cross-examination that he had two or three hundred of these pamphlets in his home, but denied that he was going to use them in his business.

People's exhibit No. 4, a pamphlet entitled "A Personal Message," consists of questions and answers about naprapathy. The second question is, "What is it?" and the answer, "Naprapathy is a system of accurately charted manipulative treatment for the cure of human ailments."

And on the next to the last page of the pamphlet it is represented that a long list of human diseases has been successfully treated by naprapathy. On the last page there is printed in heavy type, "Dr. Joseph DeYoung, Naprapathic Physician, Pipestone, Minnesota, Telephones, Office 395-J, Residence 395-M." The printed words "Pipestone, Minnesota," were crossed out by DeYoung, and under them he wrote in ink, "Thornton, Ill." DeYoung testified he had about thirty of these pamphlets in his possession, and that he intended to use them in his business.

Defendant contends the fourth count of the information should have been quashed because it does not allege that he was, in fact, engaged in the treatment of human ailments as a business. Section 24 of the Medical Practice act, *supra,* provides: "If any person shall hold himself out to the public as being engaged in the diagnosis or treatment of ailments of human beings; or shall suggest, recommend or prescribe any form of treatment for the palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; or shall diagnosticate, or attempt to diagnosticate, operate upon, profess to heal, prescribe for, or otherwise treat any ailment, or supposed ailment, of another; or shall maintain an office for examination or treatment of persons afflicted, or alleged or supposed to be afflicted, by any ailment; or shall attach the title Doctor, Physician, Surgeon, M.D., or any other word or abbreviation to his name indicative that he is engaged in the treatment of human ailments as a business; and shall not then possess in full force and virtue a valid license issued by the authority of this State to practice the treatment of human ailments in any manner, he shall be guilty of a misdemeanor," etc.

The first five clauses of this section define five different crimes. The fourth count of the information in this case

was based upon the fifth clause. The elements of the crime therein defined are: (1) The person charged must have added the word "Doctor" etc. to his name; (2) indicative that he was engaged in the treatment of human ailments as a business. This is not a declaration that the mere attaching of the title "Doctor," in itself, conclusively establishes that the person charged was engaged in the treatment of human ailments as a business, but rather that the title or abbreviation must be attached and used in a manner and under such circumstances as to indicate that such person was so engaged. These are the only requirements of the fifth clause. In order to constitute the crime therein defined, it is not essential that the person charged actually be engaged in the treatment of human ailments as a business. Actual treatment without a license is a crime under a different clause. There is no merit in defendant's contention that the fourth count is deficient because it does not contain an allegation that he was actually engaged in the treatment of human ailments as a business. Likewise there is no merit in his argument that the fourth count does not sufficiently set forth the acts charged to be a violation of the statute. The first part of the fourth count charges the defendant, in the words of the statute, with violating it. Specification is then made in the second part of the count of the acts charged to be a violation. This itemization was not present in the cases relied upon by defendant. Defendant's motion to quash count No. 4 was properly denied.

The defendant contends that the above exhibits are hearsay and that his motion to strike the same, made immediately before the case was submitted to the jury, should have been sustained. Defendant moved to strike the exhibits on the grounds: "First, because it was gotten as we claim, did not come from the defendant; and secondly, because it does not show the guilt, nor has any tendency to show the guilt of this defendant." It will be noted that defendant did not move to strike the exhibits on the ground

they were hearsay. Having moved to strike the exhibits on certain specified grounds, he waived all other grounds of objection. (*Foreman-State Trust and Savings Bank* v. *Demeter*, 347 Ill. 72, 80.) Defendant cannot now complain that the exhibits were inadmissible because hearsay.

There is no merit in defendant's contention that the verdict of guilty as to the fourth count of the information is repugnant to the verdicts of not guilty on the other counts and is, therefore, a nullity. The specific charge made against defendant in the fourth count is separate and distinct from the charges made in the other counts and the verdict of guilty as to this count is consistent with acquittal on the others.

The next question presented is whether the evidence shows beyond a reasonable doubt that defendant attached the titles "Dr." and "Physician" to his name in such a manner as to indicate that he was engaged in the treatment of human ailments as a business.

Several of the defendant's witnesses testified that naprapathy is merely a massage of a particular type, and that human diseases cannot be cured by this treatment. The defendant testified that the title "Doctor" has many different meanings and may be used outside the field of medicine. The degree of "Doctor of Naprapathy" had been conferred upon him. None of this testimony tended to prove or disprove the allegations of the fourth count, viz., that defendant attached the title "Dr." to his name indicative that he was engaged in the treatment of human ailments as a business. On two of the three exhibits heretofore discussed, either the defendant or someone in his household printed or wrote, "Dr. DeYoung," without any qualification which would have shown that he was not a regular and licensed medical practitioner. On the third exhibit, the name "Dr. DeYoung" was followed by the words "Naprapathic Physician." There was testimony which would warrant the jury's belief that defendant gave these pamphlets to Mrs.

Hermes even though he and his wife denied such a gift. In each of these pamphlets, representations are made that human diseases have been successfully treated and cured by naprapathic treatments. While defendant was not the author of these pamphlets, by attaching to his name as printed thereon the title "Dr." and by delivering them to Mrs. Hermes, he adopted the statements contained therein as his own and indicated that he was engaged in the treatment of human ailments as a business. The offense charged in the fourth count was proved beyond a reasonable doubt.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*