(No. 31906.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* E. O. HANDZIK, Plaintiff in Error.

*Opinion filed November 27, 1951.*

FREDERICK J. BERTRAM, of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. MCGAH, JR., all of Chicago, of counsel,) for the People.

Mr. Justice Maxwell delivered the opinion of the court:

Plaintiff in error, E. O. Handzik, also known as Esther O. Hankzik, was tried and convicted of a violation of the Medical Practice Act upon information filed in the county court of Cook County. She comes here directly from that court by writ of error to review the verdict of the jury and the sentence to pay a fine of $500. Direct review lies to this court because she directly challenged the constitutionality of sections 24, 36, and 37 of this act in the lower court and has properly preserved those questions for review here.

It appears from the evidence that plaintiff in error, who will be hereinafter referred to as defendant, was a woman about 60 years old at the time of the hearing, was a native of Sweden, had been in this country about 27 years and was a citizen. She resided in her second-floor apartment in the city of Chicago with her husband, Frank Handzik. She claimed to be a faith healer or healing minister ordained by the Central Baptist Church of Chicago and was a member of a sect which believed in and practiced divine or faith healing. The prosecuting witness, Mrs. Frances Dickerson, was an investigator for the Department of Registration and Education of the State of Illinois. She testified that on November 15, 1949, she went to the defendant's apartment to investigate a complaint which the Department had received about one Dr. Frank Handzik; that defendant answered the door, witness gave her the *alias* of Bertha Baker, and asked to see Dr. Frank Handzik; that defendant advised her that Dr. Frank Handzik was not in and asked her if she wanted a treatment; that she replied in the affirmative and defendant then told the witness that she was Dr. E. O. Handzik, that she did the same kind of work as Dr. Frank Handzik and invited her into the apartment; that defendant then asked her where she had her pain and the witness told her it was between her shoulders,

and defendant told her she had arthritis; that defendant then asked her if she believed in God and when witness replied that she did defendant requested a donation of $4 for her church and told witness that she would give her a treatment, that she too had had arthritis and had cured herself. The witness then described the treatment given to her which consisted of rapid inhaling, exhaling, and drinking two glasses of water, one described as "holy" water and the other as "atomic" water; that defendant also went through the rapid breathing process and stated that the purpose was to make one hot and make contact with God easier; that defendant placed her hands on the witness and prayed; that defendant told the witness that she also had machines, the "Estemeter" and "Vita Ray" machines, and if witness did not get relief from the treatment that she would apply "hot wires." The witness also testified that defendant gave her a printed card bearing the names of Dr. Esther O. Handzik and Dr. Frank A. Handzik, underneath which names was printed "Christian Psychophysicians," and showing the address, phone number and office hours. This card was introduced in evidence. The defendant testified that she believed in, had studied and practiced divine healing through prayer as a minister of her church. She denied charging a fee but admitted that she accepted a donation for her church and stated that this donation was usually divided, 10 per cent to the church and 90 per cent to her. She denied making any physical examination or diagnosis. She denied giving the witness the card but stated that she knew they were in the house. She stated that she was employed as a tailor to earn her living and did not depend upon any income from healing treatments for that purpose.

The jury found her guilty under counts 3, 4, and 5 of the information and made no finding under counts 1 and 2. Count 3 charged that defendant, on November 15, 1949, in the city of Chicago, County of Cook, "not then and

there possessing in full force and virtue a valid and existing license issued by the authority of the State of Illinois to practice the treatment of human ailments in any manner, * * * did then and there unlawfully suggest, recommend and prescribe the loud and rapid inhaling and exhaling and the drinking of water for the relief and cure of the supposed ailment of Frances Dickerson, also known as Bertha Baker, with the intention of receiving therefor a fee in the sum of four ($4.00) dollars." Count 4 alleged that the defendant, on November 15, 1949, not possessing a license of the State of Illinois to practice the treatment of human ailments in any manner, did then and there "within the said County of Cook, unlawfully attach the title Doctor, Physician, Surgeon, M.D. or some other words or abbreviation to *his* name indicative that *he* was engaged in the treatment of human ailments as a business, to wit: Did then and there unlawfully attach the title 'Doctor' to her name, indicative that she was engaged in the treatment of human ailments as a business, by informing patient that she was 'Dr. E. O. Handzik,' all in violation of Section 24 of an Act," etc. Count 5 alleged that the defendant, on November 15, 1949, not possessing a license of the State of Illinois to practice the treatment of human ailments in any manner, did then and there "within the said County of Cook unlawfully maintain an office for examination or treatment of persons afflicted * * * with any ailment, to wit: Did then and there unlawfully maintain an office for the examination and treatment of persons afflicted and supposed to be afflicted with any ailments, at 2573 Lyndale Avenue, Chicago, Illinois, all in violation of Section 24 of an Act," etc.

Defendant's written motions to quash the information, for a directed verdict, in arrest of judgment and for a new trial were all overruled by the court.

Defendant first contends that section 24 of the Medical Practice Act (Ill. Rev. Stat. 1949, chap. 91, par. 16i,) is

unconstitutional because (1) the general language used in section 24 is restricted in its operation by the exceptions made by section 37 of the same act and is therefore void, and also because section 24 provides for punishment for "any" person, which term includes those exempted by section 37; (2) the subject matter of section 24 is not embraced or expressed in the title of the act; (3) the penalties authorized by section 24 inure to the Department (section 36) which is in effect an appropriation or diversion of public funds in violation of sections 16 to 20, article IV of the Illinois constitution; (4) the provisions of section 24, providing punishment for any person using the titles "Doctor" and "Physician," violate the due process clause and constitute an abridgement of the privileges of citizens of the United States; (5) section 24 violates and infringes upon religious freedom.

Section 24 of this act provides, in substance, that if any person shall hold himself out to the public as being engaged in the diagnosis or treatment of human ailments; or shall suggest, recommend or prescribe any form of treatment with the intention of receiving any fee or gift, or any compensation whatsoever; or shall profess to heal any ailment or supposed ailment of another; or shall maintain an office for examination or treatment of any persons afflicted with any ailment; or shall attach the title Doctor, Physician, Surgeon, M.D. or any other word or abbreviation to his name, indicative that he is engaged in the treatment of human ailments as a business; and shall not then possess in full force and virtue a valid license issued by authority of this State, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine or imprisonment in the county jail, or by both fine and imprisonment.

Section 36 provides that all such fines shall inure to the Department.

Section 37 provides that this act shall not apply to certain named classes of persons, including "persons treating

human ailments by prayer or spiritual means as an exercise or enjoyment of religious freedom."

Defendant's contention that section 24 is invalid because the general language used therein is repugant to section 37 is untenable. It is an elementary rule of statutory construction that all the parts of an act relating to the same subject should be considered together and not each alone, so that the purpose and intent of the whole act can be ascertained and given effect as consistent provisions to accomplish the purpose intended. The provisions of section 37 merely constitute exceptions to the general provisions of section 24, and when the whole act is read together there is no inconsistency or repugnancy. *Mason* v. *Finch,* 2 Scam, 223; *Burke* v. *Monroe County,* 77 Ill. 610; *Thompson* v. *Bulson,* 78 Ill. 277.

There is no merit in the contention that the subject matter of section 24 is not embraced or expressed in the title of the act. The object of the provisions of section 13 of article IV of the constitution, requiring the subject to be expressed in the title of all acts of the General Assembly, is to give information as to the subject with which the act deals, and to prevent joining in one act incongruous or unrelated matters. (*People* v. *McBride,* 234 Ill. 146; *People* v. *Williams,* 309 Ill. 492; *People* v. *Jiras,* 340 Ill. 208.) The title should express in general terms the purpose of the act, and any provisions germane to that purpose may be inserted so long as they are not inconsistent with or foreign to the general subject. The title of an act is not required to be an index of all its provisions. (*People* v. *Sisk,* 297 Ill. 314.) Where there is any doubt, it should be resolved in favor of the validity of the act. (*Ritchie* v. *People,* 155 Ill. 98; *Fuller* v. *People,* 92 Ill. 182.) The title of the Medical Practice Act is "An Act to revise the law in relation to the practice of the treatment of human ailments for the better protection of the public health and

to prescribe penalties for the violation hereof." Section 24 provides that the doing of certain specified acts for the purpose of treating human ailments, without a valid license, constitutes a misdemeanor, and provides penalties upon conviction thereof. The purpose and object of the act, as set out in the title, is to regulate the practice of treating human ailments. The power to license is a common and established method of regulating. The specific acts prohibited by section 24 are all methods of treating human ailments. Prohibiting certain methods of treatment without a license is clearly not inconsistent with or foreign to regulating the practice of the treatment of human ailments, but is germane to, and in furtherance of, the purposes of the act for the better protection of the public health.

Defendant's contention that the act is invalid because section 36 provides that all fines shall inure to the Department of Registration and Education, instead of providing for such fines to be paid to the State or the county for public use and benefit, in violation of sections 16 to 20 of article IV of the constitution, cannot be sustained. We are unable to see how sections 16, 17, 18 and 19 of article IV could be interpreted to apply in any manner to a statute making disposition of fines. Sections 16, 17, and 18 apply only to appropriations made by the General Assembly out of the State treasury and section 19 deals with extra pay for persons or on contracts. Defendant's contention would have to be based on the provisions of section 20 of this article, which provides that the State shall never pay, assume, or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual. In *People* v. *Heise,* 257 Ill. 443, the defendant challenged the constitutionality of a statute which provided that the court which convicted a defendant of wife and child abandonment could order the fine paid, in whole or

in part, to the wife or guardian of the child. The defendant there contended that this statute violated section 2 of the schedule and sections 1, 16, 17, 20 and 22 of article IV. We there held, as to sections 16 and 17, that they applied only to appropriations from the State treasury, and that it was not intended that section 20 of article IV should apply in any manner to the disposition to be made of fines and penalties for the violation of our criminal statutes. The General Assembly has the power to impose penalties and the power to dispose of them, and section 36 of the Medical Practice Act does not violate any of the constitutional provisions relied on by defendant.

The defendant's contention that section 24 provides punishment for any person using the titles "Doctor" and "Physician" without a valid license ignores the plain language of the statute. Not every use of the titles is punishable, but only the use of the titles in an unlawful manner "indicative that he is engaged in the treatment of human ailments." (*People* v. *DeYoung,* 378 Ill. 256.) The licensing and control of persons who represent to the public that they are trained and qualified to treat human ailments is a valid and essential exercise of the police power of the State for the better protection of the public health. (*People* v. *Walder,* 317 Ill. 524.) Within constitutional limits the General Assembly is the sole judge of the laws that shall be enacted for the protection of the public health, and so long as such laws do not invade inherent or constitutional rights the determination of the General Assembly is conclusive. The use of these titles is not an inherent or constitutional right in everyone and the General Assembly may regulate their use in the treating of human ailments. It is common knowledge that these titles, in general use as applied to human ailments, have a connotation indicating special qualifications and training to diagnose and treat afflicted persons, and the misuse of such titles could cause deceptions, frauds and practices dangerous to the public

health. Laws regulating the use of these titles where health and even life itself are involved are not unreasonable or arbitrary. We think the prohibition of the use of such titles "indicative that he is engaged in the treatment of human ailments as a business" is reasonably necessary and appropriate to accomplish the legitimate objects and purposes of the Medical Practice Act and within the police power of the State. The validity of the Medical Practice Act of 1923 has been repeatedly affirmed by this court and we have found that section 24 does not violate the due process clause of the constitution. *People* v. *DeYoung,* 369 Ill, 341, and cases cited.

Defendant's contention that section 24 violates and infringes upon religious freedom is likewise untenable. As heretofore pointed out, section 24 must be read in conjunction with section 37, and that section specifically exempts "persons treating human ailments by prayer or spiritual means as an exercise or enjoyment of religious freedom."

Defendant contends that counts 3, 4, and 5 of the information were legally insufficient to charge a crime or offense against the State of Illinois, were insufficient to inform her of the nature and cause of the accusation, and failed to negative that she was exempt from the act, and that therefore the trial court erred in overruling her motions to quash the information and in arrest of judgment. The three counts all charged defendant with the crimes in the language of the statute and then, under a *videlicet,* with specific acts constituting violations of the act. Section 24 prescribes the precise acts which constitute violations, and the information is predicated upon these precise acts. Both the statute and the information are clear and unambiguous and informed the defendant of the exact nature of the offense. Informations in similar language have been upheld in *People* v. *Shaver,* 367 Ill. 339; *People* v. *Paderewski,* 373 Ill. 197; *People* v. *Moe,* 381 Ill. 235; *People* v. *Rongetti,* 395 Ill. 580; *People* v. *DeYoung,* 378

Ill. 256; and *People* v. *Kabana,* 388 Ill. 198. Failure to negative that defendant was one of the exempted class does not make the information insufficient. We have frequently held that such exemptions or exceptions are not a part of the description of the offense and therefore need not be negatived in the information. (*People* v. *Boyden,* 400 Ill. 409; *People ex rel. Courtney* v. *Prystalski,* 358 Ill. 198; *People* v. *Talbot,* 322 Ill. 416; *People* v. *Green,* 362 Ill. 171.) Such exemptions or exceptions are matters of defense. *People* v. *Allen,* 360 Ill. 36; *People* v. *Saltis,* 328 Ill. 494; *Sokel* v. *People,* 212 Ill. 238.

The defendant contends the court erred in overruling the motion for a directed verdict on the grounds that all the evidence, both for the State and the defendant, shows that this was purely a case of faith healing and was an exercise of her right of religious freedom. An examination of the instructions reveals that the jury was adequately instructed in regard to defendant's claimed exemption, it heard the evidence and observed the witnesses, and by its verdict found the defendant was not one of the exempted class. We cannot say that the evidence here, with the legitimate inferences deducible therefrom, is insufficient to support that verdict.

The defendant further contends that the prosecution failed to prove that she had no license, an essential allegation of the information, and that the court erred in instructing the jury that "It is not incumbent upon the People to prove that allegation of the information; if the defendant did not have such a license, it is a matter of defense and you should not find the defendant not guilty solely by reason of the fact that there is no proof of evidence as to whether the defendant did or did not have such a license." The wording of this instruction is garbled and confused but, if it says anything, it says that the People are not required to prove the allegation of the information that the defendant did not have a license.

Failure to have a license is an essential part of the description of the offense, and if that was not alleged the information would be vulnerable to a motion to quash and would not support a conviction. (*People* v. *Prystalski,* 358 Ill. 198.) As a general rule, it is elementary that the State is required to prove every essential averment of the charge against the defendant. There usually is no burden upon a defendant to disprove any averment or even to make a defense. However, there is an exception to this rule in this type of case. In prosecutions for doing an act which the State prohibits to be done by any person except those who are duly licensed, the negative averment that defendant had no license, being an averment peculiarly within the knowledge of the defendant, is taken as true, unless disproved by the defendant. (*Kettles* v. *People,* 221 Ill. 221; *Noecker* v. *People,* 91 Ill. 468; *Williams* v. *People,* 121 Ill. 84; *People* v. *Frankowsky,* 371 Ill. 493; *People* v. *Hollenbeck,* 322 Ill. 443.) Under the law as established by these cases the State was not required to prove that defendant had no license and the instruction was not prejudicial error. Furthermore, we are unable to see any unfairness or harm in applying this rule here, where defendant took the stand and testified.

In her 25 assignments of error the defendant has raised objections to the court's rulings on the evidence, the giving and refusing of various instructions, the court's refusal to excuse one of the jurors, and alleged prejudicial conduct of the prosecuting attorney. The merit or weight of none of these objections justifies extending this opinion by a separate discussion of each of them. Each has been carefully examined and none is found to be prejudicial error. It appears from the entire record that defendant has had a fair and impartial trial in every respect.

Finding no prejudicial error in the record, the judgment is affirmed.

*Judgment affirmed.*