**People of the State of Illinois, Plaintiff-Appellee, v. Samuel Shokunbi, Defendant-Appellant.**

**Gen. No. 51,597.**

First District, Fourth Division.

November 16, 1967.

Salvatore J. Bongiorno, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED

Practicing medicine without a license.[1]

---

[1] Ill Rev Stats, 1965, c 91, § 16i (Medical Practice Act):

Penalty for doing certain acts without license.

If any person shall hold himself out to the public as being engaged in the diagnosis or treatment of ailments of human beings; or shall suggest, recommend or prescribe any form of treatment for the palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; or shall diagnosticate or attempt to diagnosticate, operate upon, profess to heal, prescribe for, or otherwise treat any ailment, or supposed ailment, of another; or shall maintain an office for examination or treatment of persons afflicted, or alleged or supposed to be afflicted, by any ailment; or shall attach the title Doctor, Physician, Surgeon, M.D., or any other word or abbreviation to his name, indicative that he is engaged in the treatment of

JUDGMENT

After a bench trial, defendant was found guilty and sentenced to a term of six months in jail.

CONTENTIONS ON APPEAL

(1)   The evidence did not prove defendant guilty beyond a reasonable doubt.

(2)   The information was defective for want of specificity.

(3)   The court erred in admitting into evidence products of an unlawful search and seizure.

EVIDENCE

*Robert Savage*, for the state.

He was the police officer who arrested the defendant on January 31, 1966. He went to defendant's office, knocked on the outer door, was admitted, announced his office and "related to defendant that he was mentioned in a letter from the sheriff of Freeport, Illinois in reference to his conduct down there."

The office was located in one of Chicago's downtown office buildings. "Reverant Shokumbi" was printed on the outer door. The office consisted of one large room and two smaller rooms. The large room contained a desk, a telephone, a typewriter and one chair.

Savage observed no activity in the office at that time which led him to believe that any crime had been committed. Nor had he a warrant for defendant's arrest. In answer to his inquiry as to the type of business he was in,

human ailments as a business; and shall not then possess in full force and virtue a valid license issued by the authority of this State to practice the treatment of human ailments in any manner, he shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by confinement in the county jail not more than one year, or by both such fine and imprisonment, in the discretion of the court.

defendant stated that he was a metaphysician and that "he treats and cures people." [2] Defendant stated he was not licensed to do this.

After this colloquy Savage arrested defendant for practicing medicine without a license, searched the premises, and found "various patent drugs, some zodiac stamps, and so forth." In addition "various books and literature," "some medicines," and "some herbs and drugs" were found in the office defendant occupied.

On cross-examination Savage testified that he did not "confiscate" any medical books, that he never saw anyone treated in that office, and that never in his presence did defendant make suggestions or recommendations or give treatments for injuries or ailments.

*Samuel Shokunbi*, defendant.

He is an ordained minister in the Universal Spiritual Union. For the two years prior to his arrest he had been in the business of importing and selling to the general public all types of merchandise under the name of "[I]mports and exports, Nigerian, sales and services."

The building where he had held religious services had been sold, so he had brought the articles used in the service to his office. These were the articles found by Savage along with candles and oil. The herbs, which were found, were ground and used as incense. When asked by the policeman what business he was in, defendant had answered, "import and export."

OPINION

Defendant is charged with having committed the offense of "Chapter 91 of the Medical and Surgery Act in that he That [sic] the defendant did let himself out to

---

[2] During the hearing on the motion to suppress which immediately preceded the trial, Savage testified that defendant's answer to the same question was that "he was a metaphysician and that he was in the business of curing people." At the trial Savage's testimony at the hearing was stipulated.

the public as being engaged in the diagnosis or trete-ment [sic] of ailments of human beings and did in fact suggest, recommend or prescribe certain forms of trete-ments [sic] for the relief or cure of any physical or mental ailment without first having obtain [sic] a license from the State of Illinois." The first five clauses of the pertinent section of the Medical Practice Act define five different crimes. See People v. DeYoung, 378 Ill 256, 38 NE2d 22. The information in this case charges only a violation of the first of these clauses.[3] We are limited in review, therefore, to consideration of the charge that defendant held himself out to the public in a manner prohibited by the first clause of the statute. Defendant contends that the State failed to adduce sufficient evidence to prove the essential elements of this offense beyond a reasonable doubt.

"Various patent drugs, some zodiac stamps, and so forth"; "some medicines"; and "some herbs and drugs" were found in defendant's office at the time of his arrest. Although controverted, the State's only witness testified that defendant told him that he "treats and cures people" or that he was in the "business of curing people." The State characterizes these statements by defendant as a confession, and contends that, if taken as true, they are relevant to establish defendant's guilt.

---

[3] See footnote 1, above, for full text of the section. The fourth and fifth clauses involve the maintaining of an office and the use of a medical title, respectively. The third clause refers to one who diagnosticates, attempts to diagnosticate, operates upon, professes to heal, prescribes for or otherwise treats, while in the case on appeal defendant is charged only with suggesting, recommending or prescribing treatments. While this latter is the language of the second clause of the statute, the second clause requires also the intention of receiving, either directly or indirectly, a fee, gift or other compensation for the treatment. Since such an intention is not set forth in the information, a violation of this clause is not here charged. Nor was there any evidence of such intention.

In People v. Gordon, 194 Ill 560, 571, 62 NE 858, decided under the Medical Practice Act of 1899, the court stated, "we all agree that the objects and purposes of this and similar statutes are to protect the sick and suffering and the community at large, against the ignorant and unlearned who hold themselves out as being possessed of peculiar skill in the treatment of disease; from holding themselves out to the world as physicians and surgeons without having acquired any knowledge whatever of the human system or the diseases and ailments to which it is subject." The objects and purposes of the statute here questioned are the same, and in that context the issue is whether the State adequately proved that defendant had held himself out to the public as being engaged in the diagnosis or treatment of ailments of human beings. We think it did not. We believe that the holding out to the public proscribed by the statute must involve some assertive conduct directed towards the public which would indicate or imply that one was engaged in the diagnosis or treatment of human ailments, and with a view to establishing a physician-patient relationship. For example: an advertisement was thought to be a holding out to the public by the Illinois Attorney General (1929 Op Atty Gen 289); and in People v. Kabana, 388 Ill 198, 57 NE2d 460, the causing of one's name to be printed on booklets having to do with human ailments was characterized as a holding out to the public.

In the case on appeal, the statements were allegedly made by defendant to a police officer who had announced his office and asked, "What type of business are you in?" The responses in no way implied an offer to treat ailments of the officer or of anyone else. Furthermore, defendant's replies were not, in this circumstance, directed towards the public. There was no assertion that defendant was possessed of such special skills or ability

58

in diagnosing or treating as would imply an invitation for one to seek his services.

There is no evidence in the record that defendant did any advertising or distributed any kind of printed matter asserting that he was a healer. The sign on his office door referred to him as Reverend, not Doctor. No medical books or medical equipment were found in his office. In short, there is no evidence tending to prove any assertive conduct on his part directed towards the public—an essential element of the offense, as we read the statute.

Since the statements made by defendant to the officer did not constitute, of themselves, a holding out, the State's contention that these statements constitute an acknowledgment of having engaged in the proscribed conduct on a former occasion, corroborated by the articles found in defendant's office, is without merit. If taken as true, the language only asserts that he cures or is in the business of curing people. Without some assertion that he holds himself out to the public as a healer, this element of the offense remains unproved. Therefore, the State's evidence was insufficient to prove beyond a reasonable doubt that defendant had committed the charged offense. A discussion of the other errors assigned by defendant thus becomes unnecessary.

The judgment of the trial court is reversed.

Reversed.

DRUCKER and McCORMICK, JJ., concur.