HONORE M. LA PIERRE, Individually and as Adm'r of the Estate of Elizabeth La Pierre, Deceased, a/k/a Elizabeth Ayers Bearden La Pierre, Plaintiff-Appellant, *v.* OAK PARK FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant-Appellee.

(No. 59575;

First District (5th Division)—July 12, 1974.

Richard D. Price and Frederick J. Bertram, both of Chicago, for appellant.

John D. Plattner, of Chicago (Walsh, Case & Coale, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Plaintiff, individually and as administrator of the estate of his late wife, appeals from the judgment entered on a jury verdict for defendant.

Plaintiff alleged in count one of his complaint that on August 27, 1968, he and his wife purchased a $10,000 certificate of deposit at defendant savings and loan association; that they signed a signature card providing that in the event of his wife's death, the deposit and accrued interest thereon would be paid to plaintiff; that the certificate recited that "Elizabeth A. La Pierre P.O.D." [1] was the holder of the account; that his wife died on December 6, 1968; that by reason of defendant's gross negligence the signature card was lost, mislaid, or destroyed; and that subsequent to his wife's death (date not indicated in record), plaintiff made demand for payment, and defendant wilfully refused to pay him.

Count two was essentially the same as count one, but it omitted the claim that defendant negligently lost the signature card.

---

[1] The initials "P.O.D." are used generally by financial institutions as an abbreviated form, meaning "payable on death."

In its answer, defendant denied most of the allegations of plaintiff's complaint, admitting only that plaintiff's wife deposited the funds and signed a signature card, that defendant issued and delivered the certificate to her, and that plaintiff made demand for payment. The association alleged as a defense that on the day of deposit plaintiff's wife signed a signature card designating Shirley J. Kalergis as beneficiary of the account, payable on death, and that on January 30, 1969, defendant paid the account balance to the beneficiary upon delivery of the necessary documents, including the certificate of deposit.

Plaintiff's reply denied defendant's defense and reiterated plaintiff's allegations concerning the signature card. The reply set forth statements allegedly made by defendant's assistant secretary in the course of discovery proceedings in the probate division, to the effect that defendant could not find the signature card executed by plaintiff's wife.

Three years later, in February, 1973, plaintiff filed an additional count, alleging that plaintiff signed a signature card at the time of deposit; that defendant's officer led him to believe that the card established the deposit as a joint account of plaintiff and his wife, with right of survivorship; that subsequent to his wife's death, plaintiff gave the certificate of deposit to Shirley Kalergis, his wife's daughter by a prior marriage; that the daughter presented the certificate to defendant, which wrongfully paid the proceeds to her; that on May 22, 1969, plaintiff was appointed administrator of his wife's estate; that in a citation proceeding in September, 1969, an officer of defendant testified that he was unable to find the signature card for the account in question; that neither defendant's new account record nor the certificate of deposit indicates a beneficiary or joint owner of the account; and that the matters raised in defendant's answer did not constitute a defense because the signature card designating Shirley Kalergis purported to effect a testamentary disposition but did not comply with the Statute of Wills and was therefore void, and because section 4—10(c) of the Illinois Savings and Loan Act violates the constitution of Illinois. Plaintiff further averred that the "alleged testamentary disposition" would be a fraud on his marital rights under the Statute of Frauds and Perjuries, and that the funds were needed to pay claims against the estate, debts, the spouse's award, and the plaintiff's statutory share in the estate.

By order of court defendant was relieved from filing an answer to the additional count. Plaintiff did not record any objections.

OPINION

Both in the pleadings and on appeal defendant relied on section 4—10(c) of the Illinois Savings and Loan Act. (Ill. Rev. Stat. 1973, ch. 32,

par. 770(c).) It provides for accounts by which the holder and the savings and loan association may agree in writing that upon the death of the holder the balance of the account shall be paid to or held by a person or persons designated by the holder. By operation of statute, upon the death of the holder, the person or persons designated by him and who have survived him become the owners of the account, and any payment made by the savings and loan association to any of such persons "shall be a *complete discharge*" of the association's obligation as to the amount paid. (Emphasis added.) Ill. Rev. Stat. 1973, ch. 32, par. 770(c) (1).

■■■ Plaintiff maintains that the statute is unconstitutional on two grounds. We agree with plaintiff that the constitutionality of the provision of the Savings and Loan Act in question, which became law in 1955 and was amended in 1961, must be determined under the 1870 constitution, which was in effect at those times. (*Dee-El Garage, Inc. v. Korzen*, 53 Ill.2d 1, 289 N.E.2d 431.) Plaintiff refers us to article IV, section 13, of the 1870 constitution, which provided that "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The objects of this provision were to give information as to the subject with which an act deals, and to prevent joining in a single act incongruous or unrelated matters. (*People v. Handzik*, 410 Ill. 295, 102 N.E.2d 340, *cert. denied*, 343 U.S. 927, 96 L.Ed. 1337, 72 S.Ct. 760.) The title of the Illinois Savings and Loan Act is "An Act to revise and codify the laws in relation to Savings and Loan Associations and to provide penalties for the violation thereof, and to repeal an Act therein named." (Laws of 1955, p. 849.) Section 4—10(c) indicates one type of account that a savings and loan association may offer to the public. In no way can the provision be considered "incongruous or unrelated" to "laws in relation to Savings and Loan Associations."

■■ Plaintiff argues that the Act violates article IV, section 22, of the 1870 constitution, which provided that "The general assembly shall not pass local or special laws * * * For * * * Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." The Illinois Supreme Court has held that laws will not be regarded as special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. (*People v. Callicott*, 322 Ill. 390, 153 N.E. 688.) In the legislation at issue, the entire class of savings and loan associations, not only defendant, may offer payment-on-death accounts. In applying equally to all savings and loan associations in Illinois, the statute embraces all who occupy a similar position, and so is

a constitutionally permissible general law. *People ex rel. County of Du Page v. Smith,* 21 Ill.2d 572, 173 N.E.2d 485.

Plaintiff also contends that the statute in question is contrary to several state statutes. Specifically, he maintains that since ownership of the account passes at the death of the holder, the written agreement purporting to provide for the transfer must conform to the Statute of Wills, which requires testamentary documents to be signed by two witnesses. (Ill. Rev. Stat. 1973, ch. 3, par. 43.) This argument was considered and rejected by this court in *In re Estate of Gubala,* 81 Ill.App.2d 378, 225 N.E.2d 646.

■■■ Plaintiff maintains that this case is controlled by section 6 of the Statute of Frauds and Perjuries. It states that "Every conveyance of goods and chattels on consideration not deemed valuable in law shall be taken to be fraudulent, unless the same be by will duly proved and recorded * * *." (Ill. Rev. Stat. 1973, ch. 59, par. 6.) In *Estate of Gubala* we applied common rules of statutory construction and concluded that it was the intention of the legislature to validate the disposition of funds in a payment-on-death account even though the form of the disposition is irreconcilably inconsistent with that prescribed by the Statute of Wills. Similarly, insofar as section 4—10(c) of the Illinois Savings and Loan Act is inconsistent with section 6 of the Statute of Frauds and Perjuries, the latter is supplanted by the former, for the reasons set forth in *In re Estate of Gubala.*

Finally, plaintiff argues that section 4 of the Statute of Frauds and Perjuries, invalidating transfers made with intent to defraud "creditors or other persons" shall be void against those persons, applies to this case. (Ill. Rev. Stat. 1973, ch. 59, par. 4.) In his complaint, however, plaintiff fails to allege that his wife intended to defraud him of his marital rights. On the contrary, plaintiff alleged that his wife attempted to create a joint account giving him right of survivorship. We note also that opening an account payable on death to one's daughter, absent other circumstances, hardly can be considered to constitute fraud on a surviving spouse.

Plaintiff also attempts to rely on the recent Illinois Supreme Court decision in *Montgomery v. Michaels,* 54 Ill.2d 532, 301 N.E.2d 465. It held that although Totten trusts are generally valid under the common law, balances in Totten trusts should be available for the payment of expenses of administering the estate of the decedent, debts, the surviving spouse's award, and his statutory share, if these expenses cannot otherwise be paid. The *Montgomery* opinion did not by its terms apply to statutorily created payment-on-death accounts, such as the one at issue herein. Nor did the court reach the issue of a savings and loan associa-

tion's liability to the estate for payment of the needed funds to the designated beneficiary of either a Totten trust or a payment-on-death account. On the record before us, we also need not resolve these issues.

■■ Although plaintiff, in his motion for judgment notwithstanding the verdict, stated that sufficient undisputed evidence as to the estate's need for the funds was presented to the jury, we have no way of determining the accuracy of this claim. It is a basic principle of appellate practice that a party who brings a cause to a reviewing court must present in the record the proceedings to show the error complained of. (*Alsip Homebuilders, Inc. v. Shusta,* 6 Ill.App.3d 65, 284 N.E.2d 509.) Plaintiff has failed to provide this court with a report of proceedings or an acceptable substitute in accordance with Supreme Court Rule 323 (Ill. Rev. Stat. 1973, ch. 110A, par. 323). Accordingly, this issue, and others raised by plaintiff for which the evidence offered at trial would be necessary to our determination, is not subject to review by the court.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and DRUCKER, J., concur.