(No. 22666.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-ror, *vs.* RUSSELL HARRISON, Plaintiff in Error.

*Opinion filed February 15, 1935.*

EDWARD PREE, for plaintiff in error.

OTTO KERNER, Attorney General, ARTHUR O. FRAZIER, State's Attorney, J. J. NEIGER, and A. R. IVENS, for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

An indictment returned in Macon county charged Russell Harrison and Kenneth Mize with the crime of robbery with a gun. A jury cleared Mize but found Harrison guilty. He seeks a reversal of the judgment on the verdict by this writ of error.

The scene of action was in Decatur, where the parties concerned all lived. Wilke, the complaining witness, a switchman for the Wabash Railway Company, received his pay check on December 8, 1933. On that evening he visited a questionable resort, leaving there a little after midnight. He stopped in a lunch-room for a few minutes, making a purchase of candy. As he went toward home he noticed two men ahead of him. He was able to describe their dress and build with some particularity. Near his home he overtook them, and as he came abreast, one of them, whom he described as Harrison, struck him over the head with some object. To escape the two assailants he ran across the street into a yard, where he became entangled in a fence. He was pursued by the men and overtaken, thrown to the ground and a cold, metal object placed against his neck. He was then robbed of $52.

It is first charged that the verdict is against the law and the evidence. Wilke testified that he knew the two defendants prior to the robbery but was not personally acquainted with them. He positively identified Harrison because he saw his face two times during the robbery. His identification of Mize was not so positive, as he did not see his face. He said he did not see the object pressed against his neck when he was on the ground but did feel it with his hand. The object touched was metal and felt like a gun-barrel, for it had a small hole in the end, with a projection on the top like a gun-sight. When the People sought to establish the use of intimidation and force during the robbery, the witness was allowed to state, without objection from Harrison, that at the time he was being robbed he judged the object against his neck to be a gun. He said he returned to the lunch-stand and the robbery was reported.

Joe Bush, proprietor of the lunch-stand, testified that while Wilke was in his place two men dressed in light overcoats and light hats passed the stand going in the direction taken by Wilke soon after they passed. He said Wilke returned to the stand in about fifteen minutes, with his hat dented in, his face skinned and his overcoat dirty.

Irene Noble, the woman who conducted the resort visited by Wilke on that night, testified that she knew the two defendants. She saw them pass her house about 11:00 o'clock of the night of December 8, going east. Both wore gray overcoats and hats. At 11:30 P. M. she saw them standing on a street corner, but could not tell how long they remained there as she did not keep them under observation. During all this time Wilke was in her house, for he did not leave there until five minutes after midnight. She was able to fix this exactly by a telephone call which came at that time.

Myrtle Lowery, an inmate of the Noble house, knew the defendants when she saw them. On the night in question she saw them pass the house some time after 11:00 o'clock.

Later the same night she saw them across the street in front of a house of prostitution conducted by Margaret Rape. Harrison entered the house and Mize went on down the street. This second sight of the men she placed at about 1:00 o'clock of the morning of December 9.

Police officers gave testimony to the effect that an attempt was made to arrest Harrison on December 9, when he was with Patsy Wallard. He fled from the officers and Miss Wallard impeded them in their efforts to capture him. Harrison immediately left Decatur and did not return until the latter part of February, 1934. He was then arrested after endeavoring to flee a second time.

To support his plea of not guilty Harrison endeavored to interpose an alibi. On the stand he denied knowing Wilke or of committing the robbery. He admitted knowing Mize, but said he was not in his company on the night of December 8. In accounting for his time he said that he spent the early part of that evening in a pool-room, leaving there at 9:00 o'clock in the company of Patsy Wallard. The two spent several hours in a beer tavern, and then he left Miss Wallard and went to the railroad Y. M. C. A. Hotel, where he met his brother. After conversing with his brother a few minutes he said he ate a lunch and then registered for a room at about 12:30 or 12:40 in the morning. His brother fixed the time of their meeting at a few minutes before midnight. The room register of the hotel disclosed that R. U. Harrison registered some time on December 9, but the exact time was not fixed other than by what Harrison said. He denied being in the neighborhood of the Noble house or of spending the night across the street from there, although he admitted that he was a frequenter of this latter place. Testimony of witnesses from the Rape house supported Harrison's story that he was not there on the night in question.

It is true that a judgment of conviction will be reversed when the evidence possesses those characteristics which dem-

onstrate to this court that the verdict was the result of passion or prejudice on the part of the jury, (*People* v. *Allen*, 279 Ill. 150; *People* v. *Ryan*, 349 id. 637;) but we cannot say from the record that the jury acted unreasonably because it believed the witnesses for the People in preference to those for Harrison. The latter could not escape the fatal implications raised by his flight from attempted arrest, his leaving Decatur immediately thereafter, and his effort to flee from arrest a second time on February 25. This court will not invade the province of the jury and set aside a verdict simply because it is contrary to the defense evidence. There must be unquestionable proof that the jury exercised passion or prejudice or that the verdict was contrary to evidence which clearly and unequivocally pointed the opposite way. A reasonable doubt is not raised merely because the evidence is conflicting. *People* v. *Boucher*, 303 Ill. 375.

Objection is made because an instruction on circumstantial evidence was given. Harrison argues that the instruction was uncalled for, as there was direct evidence to connect him with the crime. The direct testimony of Wilke, however, was substantiated by evidence which was purely circumstantial, hence the instruction was warranted. The instruction given did not constitute an invasion of the field of the jury by the trial judge.

A fatal variance between the charge in the indictment and the proof is alleged, based upon the claim that the use of a deadly weapon by the robbers was not established by the evidence. The conviction was for an aggravated offense arising from the alleged use of a gun. There is no denial that a robbery was actually committed. The only witness to relate circumstances which would lead one to believe that a gun was used is Wilke. It is true that he did not see the gun, but he felt a cold, metallic object placed against his neck when he was prone on the ground. His description of this object fitted the description of a pistol

or revolver barrel. His evidence in this respect stands un-
contradicted, and was sufficient to convince the jury, beyond
a reasonable doubt, that the robbers used a gun to intimi-
date and force Wilke to submit to their larcenous desires.

Harrison further sought in vain to obtain a new trial
on the ground of newly discovered evidence. He tendered
two witnesses who would say that they saw him in a hotel
lobby shortly after midnight on December 8. This infor-
mation was volunteered to Harrison after the trial. Newly
discovered evidence will not cause the granting of a new
trial unless it is material to the point touched and of such
a conclusive character that it would probably change the
result of the trial. It must not be merely cumulative, there
must have been an impossibility of foreseeing its import-
ance, and it must be of such character that it could not
have been discovered before the trial by the exercise of
due diligence. (*People* v. *Royals*, 356 Ill. 628, and cases
cited.) The testimony respecting the presence of Harrison
in the hotel at the particular time is cumulative, and is not
conclusive to the extent of engendering a belief that it
would cause a change of result if the case were re-tried.
Nor is there any showing that Harrison exercised due dili-
gence in trying to discover this evidence. In fact, he for-
got one witness, and inquiry based upon an inspection of
the hotel register would have discovered the other. Under
all of the circumstances no error was committed by the
trial court in refusing to grant a new trial.

Other alleged errors have been pointed out and exam-
ined by us, but they are not of sufficient degree to warrant
either a reversal or discussion.

The judgment of the circuit court of Macon county is
affirmed.

*Judgment affirmed.*