(No. 36537.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE BRENGETTSY, Plaintiff in Error.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

HUGH A. BRODKEY, of Chicago, appointed by the court, (JAMES E. TYSON, and CHARLES W. NAUTS, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the criminal court of Cook County found the defendant, George Brengettsy, guilty of the unlawful sale of narcotics, and he was sentenced to imprisonment in the penitentiary for a term of not less than twelve nor more than fourteen years. On this writ of error, he contends that his guilt was not established beyond a reasonable doubt, that certain evidence was erroneously admitted and that the prosecutor's closing argument was improper.

Officer Clemie Paschal, a member of the narcotics squad of the Chicago Police Department, testified that on the evening of November 25, 1959, he and two other officers went to the vicinity of 3538 Lake Park Avenue in Chicago. When they arrived, the serial numbers of three $1 bills were copied by one of the officers, and Paschal took the bills and walked to 36th and Ellis, half a block away. There a man, whom he identified as the defendant, was pointed out to him. He approached the man and said that he wanted to "cop two buttons," which means buy two capsules of heroin. The man said, "Give me your money," and he gave the man the three bills, and watched him walk a few doors down the street and enter the building at 3543 Ellis. About five minutes later, the man reappeared with two pink capsules and gave them to Paschal. Paschal observed the man at close range for about thirty seconds during each encounter.

Paschal returned to the other officers and ran a field test which indicated that the substance in the capsules contained heroin. The officers then went back to 36th and Ellis where Paschal pointed out the defendant as the man from whom he had made the purchase, and the defendant was arrested by the other officers. The defendant protested his innocence and suggested that Paschal and the other officers go with him to his apartment so that he could establish his alibi. When they arrived there the defendant and his apartment were searched. Neither the three bills nor any narcotics were found, although more than five hundred empty capsules of the type that contained the heroin were discovered during the search of the apartment.

The defendant took the stand and denied the offense. He testified that he had not left the apartment all day until a very few moments before his arrest. Both the defendant's wife and his mother corroborated his testimony in this respect. The defendant also testified that Paschal was drunk at the time, but he was the only witness who so testified. There was also testimony that the defendant's brother and

five other young men who lived in the immediate vicinity owned the same type of "car coat" that the defendant was wearing at the time of his arrest, and that one of the other young men, who was also named "George," was at the time of the trial in custody at "the Health Center" at Lexington, Kentucky.

Although there is not complete agreement among the witnesses as to the precise quality of the lighting conditions at the spot where Paschal bought the narcotics, his testimony, if believed, established that he was able to get a good look at the defendant. The sufficiency of the identification was a question of fact for the jury, (*People* v. *Keagle,* 7 Ill.2d 408,) and this court will not reverse unless the testimony is so unsatisfactory as to leave a reasonable doubt as to the guilt of the accused. (*People* v. *Ortega,* 5 Ill.2d 79.) There is no such doubt here. Under the circumstances the officer would have been alert to observe accurately, and his two face-to-face encounters afforded sufficient opportunity for a positive identification.

The next contention advanced by the defendant is that error occurred when the trial court permitted testimony with regard to what had been discovered during the search of Brengettsy's apartment.

On cross-examination, Officer Paschal was asked about the search of the apartment, and whether the officers had found any narcotics during the search. The reply was that they had not. On redirect, he was asked whether anything pertaining to narcotics had been found. He first answered that $259 had been discovered, but that answer was stricken and the jury was instructed to disregard it. He then testified that a large number of empty capsules, of the kind that were delivered to him by the defendant, were found in a radio. The defendant objected to this testimony on the ground that "the best evidence of the capsules are the capsules." This objection was overruled, as was another that "they don't have the capsules." The best evidence objection which was

thus advanced at the trial is not urged upon this court, and it is obviously inapplicable. Instead it is now contended that the search was illegal and violated defendant's constitutional rights. This argument was first made in an oral motion for a new trial after the jury's verdict had been rendered. It is unnecessary to discuss the legality of the search because no objection upon that ground was advanced at the trial. "An objection to evidence, based upon a specific ground is a waiver of objection on all grounds not specified." *People* v. *Washington,* 23 Ill.2d 546, 548.

In his closing argument the prosecutor referred to the large number of empty capsules that were found and to the possibility that they might be used for additional sales of narcotics. The defendant's objection to this line of argument was overruled, and he asserts that prejudicial error thereby resulted. In this case, however, there was no reference to the search of the apartment in which the defendant lived during the direct examination of Officer Paschal, the prosecution's first and principal witness. The first reference to a search of the apartment came during the cross-examination of Officer Paschal, when the defendant's counsel elicited the fact that the apartment had been searched and that neither narcotics nor the three $1 bills had been found. It was on his redirect examination that this witness testified to the finding of the empty capsules. As we have stated, no valid objection was made to the admission of this evidence, and it is not necessary to decide whether or not this evidence might have been excluded upon proper objection. In the absence of such an objection, it was before the jury for such probative value as it might have, (*Chicago and Eastern Illinois Railroad Co.* v. *Mochell,* 193 Ill. 208, 212; McCormick on Evidence, sec. 54,) and it was not error to overrule the objection to the argument.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*