THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY RAY SANCHEZ, Defendant-Appellant.

(No. 71-80;

Third District—May 31, 1973.

1080

Walter E. Stradley, of Rock Island, for appellant.

David DeDoncker, State's Attorney, of Rock Island, for the People.

Mr. JUSTICE DIXON delivered the opinion of the Court:

This was a proceeding by indictment against the defendant Anthony Ray Sanchez, charging in four counts the crimes of Murder, Attempt Robbery and Involuntary Manslaughter. There was a jury trial. At the close of all the evidence the court directed a verdict on two counts but denied the motion for directed verdict as to one count of Murder and the counts for Involuntary Manslaughter. The jury returned a verdict of guilty of Involuntary Manslaughter. Defendant's petition for probation was denied and following a waiver of a hearing in aggravation and mitigation the defendant was sentenced by the trial court of Rock Island County to a term of from 8 to 10 years.

During the early evening hours of August 18, 1970, the 15 year old defendant met with a small group of his friends in his home. The boys went to a nearby park where they played awhile. Later they met a man sitting on a bench in the park and one of the boys asked him for cigarettes. The defendant attempted to take them from the man's pocket and the man pulled out a gun and said no one could have any cigarettes. An argument ensued. Defendant left the park with his friends, went to his home where he got a .32 cal. revolver from the basement. He put a bullet into the gun. Defendant claimed he got the gun from a neighbor. The neighbor, a defense witness, denied this.

The boys returned to the park with intent to "scare the dude". On the way they ran into another boy who told them the man in the park was waiting for them with a pocketful of bullets. As a result, the boys decided not to go into the park. Later they met the same man who apologized for threatening defendant with a gun. The boys then went across the street and met Bob Herron, the deceased, and some of his friends. Defendant attempted to borrow money from Herron.

During this encounter the defendant pulled out the revolver and pointing it at a cat pulled the trigger 3-4 times but the gun did not fire. Defendant then pointed the gun at Clayton Veasey. He pulled the trigger four more times and still the gun did not fire. Defendant then asked one of his friends if he liked Bob Herron, to which the friend replied that he did not. Defendant then put the gun to Robert Herron's head and told him that he would "give him three to run", that he would give him a "sporting chance" and to "run".

Herron started to turn, the defendant called him back and shot him in the eye, killing him. The victim was unarmed and the gun was a

foot away from his head when it was fired. The defendant then ran from the scene, discarding the gun, on his way home. The weapon was never found.

Defendant claimed that because the gun was rusty he did not expect it to fire and in substance claimed the death was accidental.

On cross-examination the State's Attorney asked defendant if the .32 revolver was the only gun he ever owned. The answer was, "Yeah, besides a cap gun". Then:

"Q. Did you own a .25 caliber automatic, Tony?
A. No.
Q. Whose .25 caliber automatic was in the basement?
Objection by defense counsel and motion for mistrial."

On rebuttal the State produced the testimony of Officer Hockenberry who testified that the defendant had told him that he owned a .25 automatic and that, "If those dudes from Davenport mess with me, I have a .25 automatic with nine shells and I will do them a deal".

■■ Defendant, citing only *People v. Tranowski,* 20 Ill. 2d 11, contends that the mention of the .25 automatic (which had been discovered in the basement of defendant's home incident to a valid search for the weapon employed) was incompetent, prejudicial and denied defendant a fair trial.

> *Tranowski* at page 16 states,
>
> "It is a general rule that evidence that another or other crimes were committed by a defendant, wholly independent of and disconnected from the crime for which he is being tried is not admissible. (*People v. Deal,* 357 Ill. 634.) But a corollary of the rule is that evidence, relevant to the main issue, which serves to place a defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or *knowledge,* is admissible. [Emphasis supplied] * * * Resolution of the conflict between the rule and the corollary depends on whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried."

■■ Here the defendant contended that he was unfamiliar with guns and therefore the discharge of the weapon was an unexpected accident. It thus became relevant to question him about his knowledge of other guns and proper to impeach his statement that he never owned another gun. The evidence was properly admitted.

Defendant further contends that the introduction of opinion evidence that the .32 revolver employed was a "working gun" was so prejudicial as to require a new trial.

Defendant had testified that he didn't think the .32 would work and it wasn't in working condition. On rebuttal the State called a working gunsmith of 20 years experience to testify. Objection was made as improper rebuttal and no proper foundation. After qualifying the expert there followed:

"Q. Taking a .32 caliber revolver, said revolver being a five shot revolver, said revolver having been shown to have clicked four times without going off, and clicked a fifth time, and going off, what would you say we have as far as that gun is concerned —a working or a—[Objection—no foundation.]

A. If the gun goes off, it has got to be working, it has to be.

Q. If it was working, would you say the cylinder, in those fact situations was turning?

A. Yes.

Q. Assuming this gun contained a certain amount of rust. Would rust prevent the cylinder from turning?

A. No.

Q. If this gun was so rusty that the cylinder wouldn't turn, would you say you would be able to open it to put a bullet in it.

A. No.

Q. If this gun was—if a gun is rusty, does this increase the trigger pull?

A. Yes, it probably will.

Q. When I say 'the trigger pull' what do I mean by that?

A. To work the action.

Q. The amount of what?

A. The tension on the spring and trigger."

Defendant argues that the clear intent of the above was to cause the jurors to understand that the gun in question was working and that defendant knew it was working.

■■■ The foregoing testimony could not have shown that defendant knew the gun would fire.[1] It was relevant to rebut his contention that it was a nonworking weapon. The essence of the testimony established only that if the gun fired it was a working weapon. This was a reasonable assumption agreed to later by defendant's attorney. In fact one hardly need be an expert to know that if a gun fires in the usual manner it is working. If the matter is one upon which the jury is competent to determine the fact issue, the opinion of an expert is no special aid to the jury in determining the truth and is not admissible. (*People v. Moretti*, 6 Ill. 2d 494.) Before an expert can state his opinion about

---

[1] By the verdict of not guilty as to the murder count the jury must have disregarded an implication, if any, that defendant knew the gun was working.

some device, machine or other instrumentality which is alleged to have had a part in the transaction which is the subject of the litigation, it is necessary to lay a proper foundation for his testimony by showing with reasonable certainty that the condition of the instrumentality was the same as it was at the time of the event in issue. (*Jines v. Greyhound Corp.* 33 Ill. 2d 83; *Harris Furniture Co. v. Morse,* 10 Ill. 2d 28.) Expert opinion is inadmissible if its factual foundation is nebulous. 31 Am. Jur. 2 Expert and Opinion Evidence, Sec. 36.

■■ However, we are unable to find any prejudice to the defendant by the admission of this testimony. It is not the policy to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error. Where as here it is clear from the record that the jury could not have reasonably found the defendant not guilty, errors in the admission of evidence do not require reversal. *People v. Tranowski,* 20 Ill. 2d 11, 17.

■■ Defendant next contends that the sentence was excessive and that the court should have granted probation. The granting or refusing of an application for probation rests within the sound discretion of the trial court and such discretion is to be exercised primarily for the benefit of society and only incidently for the benefit of the defendant. (*People v. Molz,* 415 Ill. 183.) The trial court was fully advised as to all matters which should be taken into consideration in exercising his discretion in granting or denying probation, especially as to all matters which the defendant desired to present and we are unable to find that his ruling was arbitrary in denying probation.

■■ We do, however, find that the sentence was excessive and it clearly appears that the sentence constitutes a great departure from the fundamental law and its spirit and purpose. "The courts of this state have sought to adopt sentences in which a final adjudication has not been made to the general public policy expressed in amended or later applicable statutes where the ends of justice will be best subserved thereby". *People v. Rhinehart* (1973), 11 Ill.App.3d 859. Under the new Unified Code of Corrections in a Class 3 felony the judge may not set a minimum sentence which is in excess of one-third of the maximum sentence actually imposed in that case. Accordingly the minimum sentence is modified and reduced to 3 years, 4 months, and the maximum sentence is to remain at 10 years.

The judgment of conviction and the sentence as modified are affirmed.

Affirmed as modified.

ALLOY, P. J., and STOUDER, J., concur.