THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT E. GREER, Defendant-Appellant.

Fifth District   No. 75-516

Opinion filed October 5, 1977.

JONES, J., specially concurring.

Michael J. Rosborough and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

The defendant, Robert E. Greer, appeals from a judgment of the Circuit Court of St. Clair County entered upon a jury verdict finding him guilty of the offense of armed robbery. Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a).

The evidence adduced at trial indicates that at approximately 9 p.m. on April 4, 1975, Ernest Godfrey was walking toward Martin Luther King Drive in East St. Louis when someone approached him from the rear, grabbed his arm and said, "I want your money." The assailant then put a gun to Godfrey's head and repeated his demand. Godfrey gave him nine dollars, a cigarette lighter, and a package of Kool cigarettes. Defendant was apprehended approximately 45 minutes after the robbery occurred. In his possession was a .22-caliber, gas operated pellet pistol; it was not loaded. One of the arresting officers testified that the weapon resembled a "357 trooper revolver" and a .45-caliber revolver.

At trial, the State introduced the expert testimony of Raymond Herr, a former East St. Louis police officer. He described the pistol taken from defendant as "a Crossman .22-caliber $CO_2$ gas gun with a three inch barrel." Herr said that when he received the pistol it was not loaded and its gas cylinder did not contain enough $CO_2$ to fire a projectile. In order to test fire the weapon, Herr purchased a gas cylinder and some .22-caliber pellets. Herr testified that when the pistol was fired, the pellets penetrated

four layers of cardboard. Despite a general objection made by defense counsel, Herr was allowed to state that, in his opinion, the pistol was a dangerous weapon. Upon cross-examination, Herr stated that the pellet gun was dangerous when operable, but that it had been inoperable until he loaded it and replaced the gas cylinder.

The Assistant State's Attorney made the following remarks during closing argument:

"That particular weapon, as you have heard testimony from a former police officer, now investigator, Ray Herr, is in fact, an operable weapon when it is loaded. It is, in fact, a dangerous weapon even without being loaded. It is in fact a dangerous weapon by the mere fact that it was used by the defendant to take money from him. * * * You have seen the weapon and you have heard testimony from Mr. Herr concerning the capabilities of that weapon, and when, in fact, it is loaded, it is capable as he test-fired it, of penetrating * * * thicknesses of standard size cardboard. I think you can all conclude that that is a much bigger consistency than that of the human skin, and you can draw your own conclusions from that testimony.

* * *

You have got by the threat of force with a dangerous weapon; you saw that weapon, you know what the weapon looks like, what it can do, whether it is loaded or unloaded; whether the defendant had a chance to unload it or not after the armed robbery, I don't know. It could have been used to have beaten the victim to death for all I know."

Defense counsel did not object to any of the foregoing comments.

Among the instructions given to the jury were People's Instructions Nos. 7 and 8, which stated, *inter alia*, that in order to find the defendant guilty of armed robbery the jury had to be convinced, beyond a reasonable doubt, that defendant had been armed with a dangerous weapon at the time of the robbery. See IPI Criminal Nos. 14.01 and 14.02.

On this appeal, defendant contends that Raymond Herr should not have been allowed to state that the pellet gun was a dangerous weapon, because his opinion did not relate to the condition of the gun at the time of the robbery. Defendant also asserts that the combination of Herr's irrelevant opinion and the State's prejudicial closing argument, in effect, directed the jury to find that he was armed with a dangerous weapon at the time of the robbery. He argues that it was reversible error to "direct" a verdict on this issue because it presented a question for the trier of fact.

The State argues that a verdict was not directed, and that it was the jury which decided that the gun used in the robbery was dangerous. The State also urges us to hold, as a matter of public policy, that a gun, loaded or

unloaded, operable or inoperable, is always a dangerous weapon within the purview of the armed robbery statute. Acceptance of this latter contention would clearly require us to affirm defendant's conviction. We will, therefore, consider it first.

The supreme court defined a "dangerous weapon" in *People v. Dwyer*, 324 Ill. 363, 155 N.E. 316 (1927). The defendant in that case was charged with robbery while "armed with a certain dangerous weapon, to-wit, a certain pistol." The defendant argued that this allegation was insufficient without the further allegation that the pistol was loaded, "because a pistol not loaded is not a dangerous weapon *per se*." Although the supreme court affirmed defendant's conviction, its reasoning in doing so is less than clear:

> "A deadly weapon is an instrument that is used or may be used for the purpose of offense or defense and capable of producing death. Some weapons are deadly *per se*; others, owing to the manner in which they are used, become deadly. *A gun, pistol or dirk-knife is itself deadly*, while a small pocket knife, a cane, a riding whip, a club or baseball bat may be so used as to be a deadly weapon. [Citations.] A weapon with which death may be easily and readily produced is a deadly weapon; *anything made for the purpose of destroying life or for another purpose, or not made by man at all, if it is a thing with which death can be easily and readily produced, the law recognizes as a deadly weapon.* [Citation.] Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case. [Citations] * * * Such things as all persons of ordinary intelligence are presumed to know are not required to be proved, and an indictment which charges that the defendant was armed with a pistol charges that he was armed with a deadly weapon. If the question were one of fact to be determined by the jury it would be presumed from the verdict of guilty that there was sufficient evidence to sustain the charge that the pistol was a deadly weapon." (Emphasis added.) (324 Ill. 363, 364-65, 155 N.E. 316, 317.)

Although the supreme court's disposition of the *Dwyer* case might indicate that a pistol, whether loaded or unloaded, is dangerous per se, the court's definition of a dangerous weapon belies that conclusion. Leaving aside the possibility that a firearm may be used as a bludgeon

(the court did not discuss that possibility in *Dwyer*), it can hardly be said that an unloaded gun is "a thing with which death can be easily and readily produced." Adding to the confusion is the court's rather enigmatic statement that if the question were one of fact it would be presumed that the evidence sustained the jury's determination.

Our courts have relied upon *Dwyer*, often *sub silentio*, in affirming many armed robbery convictions without requiring either production of the firearm used or proof that it was loaded and operable at the time of the robbery. (See, *e.g.*, *People v. Patrick*, 53 Ill. 2d 201, 290 N.E.2d 227 (1972); *People v. Mentola*, 47 Ill. 2d 579, 268 N.E.2d 8 (1971); *People v. Emerling*, 341 Ill. 424, 173 N.E. 474 (1930); *People v. Moore*, 14 Ill. App. 3d 361, 302 N.E.2d 425 (1st Dist. 1973), and cases cited therein (use of dangerous weapon may be inferred from circumstantial evidence).) In *People v. Harrison*, 359 Ill. 295, 194 N.E. 518 (1935), for example, an armed robbery conviction was upheld even though the only evidence that the defendant was armed with a dangerous weapon was the testimony of the victim that a cold, metallic object, which fitted the description of a pistol or revolver barrel, was placed against his neck. See also *People v. Wyatt*, 23 Ill. App. 3d 587, 319 N.E.2d 575 (3d Dist. 1974).

The foregoing cases strongly indicate that any firearm is a dangerous weapon as a matter of law. It must be noted, however, that in none of these cases was the particular weapon involved in the crime actually introduced into evidence. (But see *People v. Estes*, 37 Ill. App. 3d 889, 346 N.E.2d 469 (4th Dist. 1976).) As will be seen, the courts have been reluctant to apply this per se rule with full vigor when faced with evidence that the "dangerous weapon" used in an armed robbery was, in fact, unloaded or otherwise inoperable.

In *People v. Trice*, 127 Ill. App. 2d 310, 262 N.E.2d 276 (1st Dist. 1970), the evidence that two defendants had committed armed robbery consisted of the victim's testimony that one of the defendants had placed a pistol to the victim's head and relieved him of some personal belongings and cash. When the defendants were apprehended, each of them had a .22-caliber starter pistol in his possession and the question arose whether a starter pistol was a dangerous weapon. The appellate court, citing the *Dwyer* case, held that this was a question for determination by the trier of fact because:

> "There was testimony in the present case that the weapon was held to the head of the victim; there was also testimony that a charge from a shell can create a high flash and cause considerable damage. Based on such testimony the jury was entitled to conclude that the weapon was dangerous." 127 Ill. App. 2d 310, 321, 262 N.E.2d 276, 282.

In *People v. Ratliff*, 22 Ill. App. 3d 106, 317 N.E.2d 63 (4th Dist. 1974), defendant was convicted of armed robbery and contended, on appeal, that the judgment should be reduced from armed robbery to robbery since the weapon used was a .22-caliber pistol designed to fire blank cartridges and, therefore, not a dangerous weapon. The court held that this issue was for the jury to resolve, reasoning that:

"Defendant argues that there is nothing in the record upon which it may be concluded that the weapon was dangerous 'as used.' We note that the 'starter pistol' in *Trice* was used to threaten the victim; in *Dwyer* the weapon was a pistol but there was no allegation that it was loaded. It, too, was used to threaten the victim. We do not understand *Dwyer*, or *Trice* to stand for the proposition that injury or physical harm must be inflicted upon a victim as a prerequisite to a finding that the instrumentality is a dangerous weapon.

The weapon in question is a piece of metal; it could have been a brick, a ball bat or anything else which could be utilized in a manner dangerous to the physical well-being of the individual threatened. We, therefore hold that the jury was fully justified in finding that the pistol used by the defendant was a dangerous weapon within the purview of the statute." 22 Ill. App. 3d 106, 108, 317 N.E.2d 63, 64.

In *People v. Richards*, 28 Ill. App. 3d 505, 328 N.E.2d 692 (5th Dist. 1975), the victims of an armed robbery testified that a sawed-off weapon of some kind had been used by the assailant. One of the witnesses stated that he was certain that the weapon involved was a sawed-off double-barrel shotgun. Defendant testified that she had used a .22-caliber sawed-off rifle in committing the robbery. The rifle was introduced into evidence by defendant. It could not be fired because the bolt mechanism was missing and the trigger was inoperable. Defendant's sole trial strategem was that the .22-caliber rifle was the weapon used in the robbery and that, because of its inoperative nature, it was not a dangerous weapon. Despite the conflicting evidence as to the type of weapon used in the robbery, the trial court allowed People's Instruction No. 11 to be given. It stated that:

"The People are not required to prove beyond a reasonable doubt any non-material allegations in the indictment. The type of weapon used is not a material allegation and need not be proved beyond a reasonable doubt."

■■ Defendant's conviction was reversed by this court on appeal. In reversing, we cited the well-settled rule that an instruction which removes from the jury the consideration of an element of the offense is erroneous and reasoned that, "[t]he jury could have decided that the inoperable sawed-off rifle * * * was not the weapon used, but they could hardly

have found that it was a gun, and therefore a dangerous weapon, considering its patently inoperative nature and the manner of its use. The effect of People's Instruction 11 and the State's argument, however, removed that question from the jury * * *." 28 Ill. App. 3d 505, 510, 328 N.E.2d 692, 695.

The issue with which we are presently confronted was considered by the Appellate Court for the Third District in *People v. Hill*, 47 Ill. App. 3d 976, 362 N.E.2d 470 (3d Dist. 1977). The court there held that because an unloaded air pistol was a piece of metal and could have been used as a bludgeon, the trier of fact was justified in finding that it was dangerous.

In *People v. Webber*, 47 Ill. App. 3d 543, 362 N.E.2d 399 (2d Dist. 1977), defendant was convicted of robbery while armed with a shotgun. He argued on appeal that the shotgun was not a dangerous weapon per se because it was not proved to have been loaded. The court rejected this contention, stating that:

> "Without proof which would more clearly show that the gun was not capable of being used as a dangerous weapon * * * the defendants have not overcome the legal conclusion that the shotgun was a dangerous weapon per se." (47 Ill. App. 3d 543, 544, 362 N.E.2d 399, 400.)

The court also indicated that it would have affirmed defendant's conviction even if he had shown that the shotgun was unloaded during the robbery. The record indicated that the barrel of the weapon was placed as close as a foot or a foot and a half away from the victim and that it was moved up and down. In the court's words, "[t]here [was] sufficient evidence in the record to support the judge's determination that the shotgun was clearly capable of being used to inflict injury even if it were not loaded." 47 Ill. App. 3d 543, 545, 362 N.E.2d 399, 400.

■■ The cases cited and discussed above indicate that if the weapons used in the robberies in *Trice, Ratliff, Richards, Hill* and *Webber*, had not been introduced into evidence, and the State had relied solely upon the testimony of eyewitnesses that the defendants had been armed with guns, their convictions would have been upheld because of the well-settled rule that a gun is per se a dangerous weapon. Because the courts were faced with evidence that the "firearms" involved in those cases would not fire, however, they felt obligated to find some other reason to affirm the convictions or, in the *Richards* case, to suggest that the inoperative weapon was not dangerous, or at least that the jury should not have passed on its dangerous character. Strictly speaking, then, the rule is not that any gun is a dangerous weapon as a matter of law. Illinois case law indicates that a gun is a dangerous weapon per se, unless it is shown that the particular weapon involved in the robbery was not dangerous or, in

other words, that the law presumes that an object which has the outward appearance of a gun is dangerous (*i.e.*, loaded and operable), but this presumption may be rebutted by proof that it is not.[1]

This presumption is the result of two opposing considerations. On the one hand, to require the State to prove that a firearm used to commit a robbery was loaded and operable would greatly restrict the applicability of the armed robbery statute. Under such a requirement, a defendant could be convicted of armed robbery only if he were apprehended at the scene of the crime or immediately thereafter with the loaded and operable gun in his possession, or if the gun itself were discovered, identified, and found to be loaded and operable, or if the defendant actually fired the weapon. On the other hand, it would be illogical and, perhaps, unfair to convict a person of robbery "while armed with a dangerous weapon" in the face of evidence indicating that his weapon was, in fact, not dangerous.

Also influencing the development of Illinois law in this area is a failure by the courts to decide whether a subjective or objective standard should be employed in determining whether a weapon is dangerous. A subjective standard would require that the issue be resolved by "standing (or quavering) in the shoes" of the robbery victim. This standard has some appeal because a robbery victim's belief that his assailant is armed with a dangerous weapon has great coercive effect. The State emphasizes this in its brief, pointing out that:

> "We are dealing with a victim here who was accosted after dark by a robber who put a gun to his head and demanded his money. This victim was understandably terrified. He was in no position to determine the effectiveness or dangerous potential of the gun placed to his head. He could only believe, and logically so, that the gun placed to his head was loaded and potentially lethal. The situation in which the victim found himself unequivocally indicated danger."

■■ However, if the weapon used was not actually capable of

---

[1] The approach which Illinois courts have taken in determining whether or not a firearm is a dangerous weapon may be sensible, but its constitutionality is suspect because, in a sense, it shifts to the defendant the burden of proving that his weapon was not dangerous. (See *People v. Smith*, 85 Misc. 2d 1, 380 N.Y.S.2d 569 (Sup. Ct. 1976); but see *Patterson v. New York*, ___ U.S. ___, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977).) It is a corner-stone rule of criminal law that every person is presumed innocent until proved guilty beyond a reasonable doubt. Accordingly, the State has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime charged. This burden never shifts to the defendant; he need not prove his innocence. (*Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *People v. Weinstein*; 35 Ill. 2d 467, 220 N.E.2d 432 (1966); *People v. Halley*, 131 Ill. App. 2d 1070, 268 N.E.2d 449 (5th Dist. 1971), and authorities cited therein.) Defendant has not properly raised and preserved a constitutional argument in this case.

inflicting death or grievous bodily injury, then its use was nothing more than a threat of the imminent use of force, an element of simple robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—1.) A recent criminal law treatise cogently discusses the necessity of distinguishing between the "threat" and "dangerous weapon" elements of the crime of armed robbery, stating that:

> "The great weight of authority holds that an unloaded pistol, not used as a bludgeon, is nevertheless a dangerous or deadly weapon for armed-robbery purposes. (Some jurisdictions even hold that a toy pistol is such a weapon.) The majority view seems wrong, however; intimidation by some means is a necessary ingredient of simple robbery without violence; something additional in the way of dangerousness is needed for aggravated robbery; but the robber's use of an unloaded (or toy) gun adds nothing extra to the bare fact that he intimidated the victim.
>
>                * * *
>
> Perhaps another way to express the matter is this: the greater punishment is awarded for armed robbery so as to deter the dangerous person who is actually capable of inflicting death or serious bodily harm. The robber with the unloaded or toy gun is not nice—is guilty in fact of (simple) robbery—but he is not the dangerous type for whom the greater penalty is reserved." (W. LaFave and A. Scott, Criminal Law 703, 703 n. 67 (1972); see *Cooper v. State*, 201 Tenn. 149, 297 S.W.2d 75 (1956) (legislature intended to prevent violence often attending use of dangerous weapon; toy gun not dangerous).)

We agree with the above analysis and do not think it is inconsistent with Illinois case law. Accordingly, we reject the State's contention here that proof of the use of a firearm is, under all circumstances, sufficient evidence that defendant was armed with a dangerous weapon.

■■ The evidence in the instant case established that the pellet gun was unloaded approximately 45 minutes after the robbery and that its gas cylinder was, in effect, empty when Raymond Herr tested the weapon two months later. It is still possible that the gun was loaded and operable at the time of the robbery, as defendant could have fired and unloaded it after committing the offense. Moreover, the weapon was made of metal and was held close to the victim's head; it could have been used as a bludgeon. We are, therefore, of the opinion that it was for the jury to decide whether the pellet gun was a dangerous weapon. (See *People v. Webber; People v. Hill; People v. Ratliff*.) Defendant concedes this point in his brief. He argues, however, that the jury was misled by errors committed at trial into ignoring evidence that the weapon may have been unloaded and inoperable when the robbery was committed.

Defendant contends that an insufficient foundation was laid for

Raymond Herr's statement that the pellet gun was dangerous because there was no showing that the gun was in the same condition when tested as it was at the time of the robbery. In other words, defendant asserts that before the State may introduce an expert's opinion that a·weapon is dangerous when loaded and operable, it must prove that the weapon was, in fact, loaded and operable when the robbery was committed. Such a foundation must normally be laid prior to the introduction of an expert's opinion (see *Jines v. Greyhound Corp.*, 33 Ill. 2d 83, 210 N.E.2d 562 (1965); *People v. DeStefano*, 30 Ill. App. 3d 935, 332 N.E.2d 626 (1st Dist. 1975); *People v. Sanchez*, 11 Ill. App. 3d 1079, 297 N.E.2d 230 (3d Dist. 1973); *People v. Parr*, 130 Ill. App. 2d 212, 272 N.E.2d 712 (1st Dist. 1970)), and we will assume, *arguendo*, that it was required here.

■■  No objection was made by defense counsel when Raymond Herr explained how he had test-fired the pellet gun. This evidence, therefore, was admissible and could be considered by the jury for whatever probative value it had. (*People v. Brengettsy*, 25 Ill. 2d 228, 184 N.E.2d 849 (1962).) With the results of the witness' test properly before the jury, we feel that allowing him to state a conclusion based on those results was harmless. Herr's opinion was merely that the pellet gun was dangerous because its projectiles could penetrate four thicknesses of cardboard. Any reasonably intelligent person would reach the same conclusion. Moreover, both direct and cross-examination made it clear that in order to fire the gun, Herr had to load it and replace its gas cylinder and that his opinion applied to the weapon only in this altered condition.

■■ ■  Defendant also assigns as error certain remarks made by the Assistant State's Attorney during closing argument which emphasized the importance of Raymond Herr's testimony. Because defendant failed to object to the remarks at trial, however, he has waived this issue for purposes of appeal. (*People v. Dukett*, 56 Ill. 2d 432, 308 N.E.2d 590 (1974); *People v. Mackins*, 17 Ill. App. 3d 24, 308 N.E.2d 92 (1st Dist. 1974).) We also note that the remarks to which defendant takes exception dealt mostly with the results of Raymond Herr's test rather than with his opinion. Because the results of the test were properly before the jury, it was not error to allow the Assistant State's Attorney to refer to them in closing argument. *People v. Brengettsy.*

During closing argument for the defense, counsel argued that the pellet gun was not dangerous, stating "[n]ow let us go to this weapon for just a moment. A dangerous weapon, how did it become dangerous? Only when the officer made it operable." In addition, the jury was properly instructed that in order to find defendant guilty of armed robbery it had to conclude, beyond a reasonable doubt, that he was armed with a dangerous weapon. Under the circumstances, we are convinced that the

jury was well aware of defendant's contention that the pellet gun was not dangerous and simply rejected it.

For the reasons stated above, the decision of the Circuit Court of St. Clair County is affirmed.

Affirmed.

CARTER, P. J., concurs.

Mr. JUSTICE JONES, specially concurring:

I agree with the majority that this case should be affirmed. However, I disagree with certain statements and conclusions contained in the majority opinion and feel compelled to comment thereon.

I note at the outset that the remarks and conclusions they make regarding the Illinois law on when a weapon is a "dangerous weapon" is dicta, unnecessary to the conclusion they reach. They treat the unfireable gun as a bludgeon, or at least indulge the jury's so treating it, and affirm the conviction. Precedent calls for just such result. However, precedent does not call for, nor in my opinion does it justify, the conclusons regarding the "dangerous weapon" treatment by the Illinois cases.

The majority states, "Strictly speaking, then, the rule is not that any gun is a dangerous weapon * * * as a matter of law. Illinois case law indicates that a gun is a dangerous weapon *per se*, unless it is shown that the particular weapon involved in the robbery was not dangerous or, in other words, that the law presumes that an object which has the outward appearance of a gun is dangerous (*i.e.*, loaded and operable), but this presumption may be rebutted by proof that it is not. * * * Accordingly, we reject the State's contention here that proof of the use of a firearm is, under all circumstances, sufficient evidence that defendant was armed with a dangerous weapon."

I do not join with the majority in their rejection of the State's contention for I believe it to be consistent with the Illinois law on the subject. In short, I would, and I believe Illinois does, apply a subjective standard in determining whether a weapon used in an armed robbery was a "dangerous weapon." I accordingly disagree with the portions of the majority opinion which I quote above and the conclusions they draw in the language that intervenes.

The majority states that there has been a failure upon the part of the Illinois courts to decide whether a subjective or objective standard should be employed in determining whether a weapon is dangerous. I agree with them to the extent that no case in express terms has stated that a subjective standard is to be used, but it seems apparent from the cases that a

subjective test has been used, save for the case of *People v. Richards*, 28 Ill. App. 3d 505, 328 N.E.2d 692.

The majority assert that they "* * *" reject the State's contention here that proof of the use of a firearm is, under all circumstances, sufficient evidence that defendant was armed with a dangerous weapon." I would not categorically reject the State's contention. While I would not want to go so far as to say that under *all* circumstances evidence that mere possession by a defendant of a firearm, be it operable or inoperable, is sufficient proof that he is armed with a dangerous weapon, I would say that such possession *could,* in all circumstances, constitute proof that defendant was armed with a dangerous weapon. In making the determination the focus should be not so much upon the firearm or the pseudo firearm itself, but upon the intention with which the alleged firearm, or other weapon, was used by the perpetrator and the belief such use instilled, or reasonably could have been expected to instill, in the victim.

Why, in determining whether the object is dangerous, focus on the object itself? The statute does not require it and the cases dealing with the matter have gone to great lengths to find weapons "dangerous" when such finding was in fact completely unsupported by the evidence. The majority cite cases in which a weapon was found to be "dangerous" when it was not produced at trial, or, indeed, even displayed to the victim. What the courts have done in these cases is follow a subjective standard, they have looked to the effect intended to be produced, and in fact produced, upon the robbery victim by the use of an alleged weapon.

By the very act of using and pointing an object similar to a firearm the accused represents it to be an operable firearm. One looking into the barrel of a gun will be strongly inclined to accept it for what it appears to be. As we stated in *People v. Halley,* 131 Ill. App. 2d 1070, 1073, 268 N.E.2d 449: "It is not unusual for one viewing a gun from the muzzle end to be unsure of the presence of a firing pin, bullets and an open barrel or its firing capabilities. Much sorry experience has taught members of our society to be inclined to accept such 'objects' for what they appear to be and what they are represented to be, firearms."

The fear instilled in the victim brings him into subjection, not the actuality of the object as a dangerous weapon. We are essentially dealing with intent, motivation and effect. Whether the firearm used is operable or not would have no bearing on those motifs. When we consider the effect of the use of an objective standard upon the evil sought to be corrected (the use of weapons in a robbery) we find that the evil result remains (a terrorized victim) and the deterrence factor is eliminated.

An examination of the Illinois cases dealing with the subject of what constitutes a dangerous weapon that will sustain the aggravated charge of

armed robbery leads to the conclusion that Illinois courts have in practice, if not expressly, adopted and followed a subjective standard. That is, the question of whether a weapon is dangerous is determined by looking to the effect the weapon had on the victim. Such treatment is not contrary to the teaching of the *Dwyer* case.

Following the statement of the *Dwyer* case the majority cites *People v. Patrick; People v. Mentola; People v. Emerling; People v. Moore*; and *People v. Harrison* for the statement that many convictions for armed robbery ensue without requiring either production of the firearm or proof that it was loaded. Their conclusion is, of course, correct, and is explainable solely upon the grounds that the courts in those cases followed a subjective standard in determining whether the weapons involved were dangerous.

In those cases the proof that defendant was armed with a dangerous weapon consisted solely of the victims' testimony that the assailant had a gun or a knife. There was no requirement of proof that the weapons were dangerous in fact; it was presumed that they were. In the *Emerling* case it was stated that a sawed-off shotgun or a revolver is *per se* a dangerous weapon, citing *People v. Dwyer*. In *People v. Harrison* no weapon was ever seen by the victim. Proof that the defendant used a dangerous weapon consisted solely of the victim's testimony that defendant placed a cold metallic object against his neck.

The majority assert that Illinois courts have been reluctant to apply the *per se* dangerous rule with full vigor when faced with evidence that the "dangerous weapon" used in an armed robbery was, in fact, unloaded or otherwise inoperable. I disagree with this statement and contend that the cases show an easy willingness on the part of the Illinois courts to find any weapon used, no matter what its condition or manner of use, to be dangerous. The sole requirement seems to be that whatever object was brandished or used was intended to and did in fact subdue the victim. That is only to say that a subjective standard has been applied. In the *Trice* case .22 caliber starter pistols, incapable of firing a projectile, were found to be dangerous because they were capable of causing flesh burns. In the *Ratliff* case a .22 caliber pistol designed to fire blanks was found to be dangerous because it could be used as a bludgeon. The court noted that the starter pistol in the *Trice* case and the pistol (without proof of its being loaded) in the *Dwyer* case were *used to threaten the victim.* In the *Webber* case, cited by the majority, the court did say that "[w]ithout proof (by the defendants) which would more clearly show that the gun was not capable of being used as a dangerous weapon * * * the defendants have not overcome the legal conclusion that the shotgun was a dangerous weapon *per se*," citing *People v. Emerling.* Later in the opinion, however, the *Webber* court noted that the barrel of the unloaded

shotgun was at times placed as close as one foot away from the victim. They found the evidence sufficient to support the finding of the trial judge's determination that the shotgun was clearly capable of being used to inflict injury even if it were not loaded.

A comparatively recent supreme court case that serves as an exemplar of the attitude of the Illinois courts towards the "dangerous weapon" aspect of armed robbery, and which I believe shows the use of a subjective test, is *People v. Elam*, 50 Ill. 2d 214, 278 N.E.2d 76. In that case the defendant boarded a bus and stood next to the driver fumbling through his pockets. He finally dropped his hand behind the driver's back and said: "This is a small gun but it will blow your back out." Defendant was given money and he left the bus but was arrested a short time later and a knife with a three-inch blade was found on his person. Defendant argued at his trial that all the elements of armed robbery had not been proved because no gun was found on him nor introduced at trial. The conviction was affirmed, the court stating:

> "In this case, McGarrity, the victim of the robbery, was told by his assailant, *and believed*, that a small gun was pointed at his back. The defendant was apprehended within minutes after the robbery, and a knife was found on his person. Under these circumstances, we reject the argument that the defendant was not armed with a dangerous weapon, even though it could not be seen." (Emphasis added.) *People v. Elam*, 50 Ill. 2d 214, 220.

As noted above, the case of *People v. Richards* is the only Illinois case I have discovered which reversed an armed robbery conviction on the grounds that the firearm (a sawed-off .22 rifle) was inoperable and therefore not a dangerous weapon. The court did not consider the possibility that the sawed-off rifle could be used as a bludgeon as had been done in other cases. There was no question in *Richards* that the brandished object was capable of intimidating since it was successfully used in the robbery. Absent the use of the object there probably would have been no robbery at all since the girl could hardly take property from the husband and wife "by the use of force or by threatening the imminent use of force." The *Richards* case could well have been concluded the same as the case under consideration and the other cases which treated inoperable weapons as bludgeons. The jury in *Richards* determined that the inoperable sawed-off rifle was a dangerous weapon and such determination should have been conclusive. *People v. Webber; People v. Trice; People v. Dwyer.*

We thus see that the Illinois cases which have considered the question of what constitutes a "dangerous weapon" that will serve as grounds for the aggravated charge of armed robbery have gone to great lengths to find that any object brandished or used as a weapon has been found to be

"dangerous" where by its use the assailant succeeded in subduing his victim. This result has followed where the gun, knife or other weapon was not produced at trial, where there was no proof offered to show a gun was loaded or capable of being fired, where the use made of the firearm or other weapon was in a manner other than that for which it was intended, and, in the ultimate reach of the process, where the victim never even saw or felt the weapon used. The picture painted by the cases is clear. If the victim subjectively and reasonably determines that the assailant is possessed of a dangerous weapon and is subdued to the will of the assailant and suffers his property to be taken, then the weapon is, as a matter of law, dangerous within the perview of the armed robbery statute.

At the risk of undue length, I would make one further comment on the majority opinion. In a footnote they state that it is constitutionally suspect to shift to the defendant the burden of proving that his weapon is not dangerous. I adhere to the belief above expressed that whether the weapon was dangerous in fact is immaterial but nevertheless disagree that it is constitutionally improper to place upon defendant the burden of proof that his weapon is inoperable.

The Supreme Court has recently spoken on this question in *Patterson v. New York*, ___ U.S. ___, ___, 53 L. Ed. 281, 292, 97 S. Ct. 2319, 2327:

"We thus decline to adopt as a constitutional imperative, operative country-wide, that a State must disprove beyond reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the non-existence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here."

In that same case, in a footnote, the court stated:

" 'The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of

convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression. Cf. Wigmore, Evidence, Vol. 5, secs. 2486, 2512 and cases cited.' " (___ U.S. ___, ___, 53 L. Ed. 2d 281, 288, 97 S. Ct. 2319, 2323 n. 9.)

Also see *Leland v. Oregon*, 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002. In 22A C.J.S. Criminal Law §571 (1961) it is stated:

"Where the subject matter of a negative averment in the indictment, or a fact relied on by accused as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him."

Among the citations of authority are *People v. Handzik*, 410 Ill. 295, 102 N.E.2d 340 and *People v. Wilson*, 375 Ill. 506, 31 N.E.2d 959. Also see *People v. Williams*, 40 Ill. 2d 522, 240 N.E.2d 645; *People v. Hammond*, 1 Ill. 2d 65, 115 N.E.2d 331.

In *People v. Halley* we discussed several cases where the burden of proof in criminal prosecutions was shifted to the defendant. Placing the burden of proof that a weapon possessed by him is inoperable is well within the parameters drawn by these cases.