THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICKY SKELTON, Defendant-Appellant.

Fifth District   No. 79-45

Opinion filed December 4, 1979.

JONES, P. J., dissenting.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Raymond F. Buckley, Jr., and Gary L. Cobe, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a jury trial in the Circuit Court of Williamson County, defendant, Ricky Skelton, was found guilty of armed robbery and sentenced to 10 years imprisonment. On appeal, defendant raises two issues: whether the jury erred in finding that a toy gun was a "dangerous weapon" within the meaning of the armed robbery statute (Ill. Rev. Stat. 1977, ch. 38, par. 18—2); and whether certain comments of the prosecutor during closing arguments deprived him of a fair trial.

The robbery which defendant stands convicted of occurred around 6:30 p.m. on August 10, 1978, at The Value Store, west of Marion, Illinois. At trial, defendant was positively identified by a cashier and another store employee as the man who at that time demanded and obtained money from the cashier while pointing a gun at her. The evidence further established that the robber was seen to run into a wooded area behind the store. The police were immediately summoned and while searching the area discovered the defendant lying face down on the ground approximately 300 yards from the store.

A plastic, toy revolver was found in defendant's waistband, and a search of his wallet revealed the presence of $433. A further search of defendant's person at the police station turned up an additional $200, and a search of the area near the spot where defendant was apprehended resulted in the discovery of a paper sack similar to that used in the robbery and two $20 bills. The total sum of the money seized came to $5 more than the amount which was taken from the store.

In an effort to counter the incriminating circumstances surrounding his apprehension, defendant testified in his own behalf. He stated that on the day of the robbery, he was paid $250 by a friend for rebuilding his car's engine. Later that day, he went to a tavern in Herrin, Illinois, but before doing so, he placed $200 in his boot so that no one could see how

much money he had. While at the tavern, he drank some beers and played pool for money with some strangers, winning four or five hundred dollars.

According to defendant, he then attempted to hitchhike back to his parents' house. He obtained a ride and was dropped off by The Value Store. He did not enter the store but headed cross-country toward his parents' house. As he walked through the woods, he became concerned that his father might become angry because he had had too much to drink and decided to sit down for a while and try to sober up. The next thing he knew, a police officer was there pointing a gun at him. Defendant testified further that he did have the toy gun in his belt but that he had found it lying on the ground near the woods and had decided to take it home and give it to his niece as a birthday present.

Defendant's first contention is that his conviction for armed robbery must be reduced to simple robbery because the State failed to prove that he committed the robbery while armed with a "dangerous weapon." More specifically, he argues that the jury erred in finding that the particular toy gun involved in this offense was a "dangerous weapon" within the meaning of the armed robbery statute. We agree.

■■■ A gun which is incapable of firing a projectile is not a dangerous weapon *per se*; although, the trier of fact may, in certain instances, properly find such a gun to be a dangerous weapon. (See, *e.g., People v. Greer* (1977), 53 Ill. App. 3d 675, 368 N.E.2d 996; *People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470; *People v. Webber* (1977), 47 Ill. App. 3d 543, 362 N.E.2d 399; *People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63; *People v. Trice* (1970), 127 Ill. App. 2d 310, 262 N.E.2d 276.) If the weapon in question and the manner of its use permits more than one conclusion, whether it is a dangerous weapon becomes a question of fact for the jury. (*People v. Dwyer* (1927), 324 Ill. 363, 155 N.E. 316; *People v. Webber.*) In making this determination, the jury need not be concerned with whether the robbery victim was harmed since actual injury or physical harm need not be inflicted upon a victim before an instrumentality can be found to be a dangerous weapon. (*People v. Ratliff; People v. Hill.*) It is sufficient if the instrument used to threaten a victim of a robbery was capable of being used in a manner to cause harm or injury. Thus, in *People v. Ratliff*, a .22-caliber pistol designed to fire blank cartridges was held to be a dangerous weapon on proof of the fact that it was pointed at the victim from a distance of three or four feet. Similarly, in *People v. Hill*, an unloaded, uncocked pellet gun which had been pointed at the head of the victim was held to be a dangerous weapon in view of its metallic composition and similar size to a .45-caliber automatic pistol.

■■ In *People v. Greer*, we reviewed at length the numerous cases dealing with the vexing question of what instrumentalities may constitute

"dangerous weapons," beginning with the Supreme Court's opinion in *People v. Dwyer.* We concluded, our brother Jones disagreeing, that the test must be an objective one, viewed from the position of the actor and the type of weapon or instrumentality employed in committing the robbery. We concluded that a dangerous weapon must be something by which death or serious bodily harm may be inflicted on the victim. We stated that:

> "Illinois case law indicates that a gun is a dangerous weapon per se, unless it is shown that the particular weapon involved in the robbery was not dangerous or, in other words, that the law presumes that an object which has the outward appearance of a gun is dangerous (*i.e.*, loaded and operable), but this presumption may be rebutted by proof that it is not." (53 Ill. App. 3d 675, 681-82, 368 N.E.2d 996, 1001.)

In the recent case of *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, the supreme court quoted *Dwyer* with approval in holding that a fingernail clipper, containing a sharp, pointed fingernail file, which was held to the complainant's neck, could be a dangerous weapon considering its potential for doing harm. We would note that the instrumentality was in fact used as a knife in *Robinson.* And of course, an unloaded pistol or toy gun, if made of metal, may be a dangerous weapon if used or threatened to be used as a bludgeon. *People v. Ratliff.*

In *Greer,* we rejected the "subjective" standard that considers the character of the weapon or instrumentality from the position of the victim. Under this view, an unloaded pistol, or a toy pistol, may be a dangerous weapon if the victim believes the weapon to be a loaded, operable weapon. While this view has great appeal, as the victim may be placed in terror and fear by a toy gun just as readily as by an operable weapon, eminent writers have disapproved the so-called subjective test. LaFave and Scott in their treatise on criminal law state:

> "The great weight of authority holds that an unloaded pistol, not used as a bludgeon, is nevertheless a dangerous or deadly weapon for armed-robbery purposes. (Some jurisdictions even hold that a toy pistol is such a weapon.) The majority view seems wrong, however; intimidation by some means is a necessary ingredient of simple robbery without violence; something additional in the way of dangerousness is needed for aggravated robbery; but the robber's use of an unloaded (or toy) gun adds nothing extra to the bare fact that he intimidated the victim." LaFave and Scott, Criminal Law 703 (1972).
>
> "Perhaps another way to express the matter is this: the greater punishment is awarded for armed robbery so as to deter the dangerous person who is actually capable of inflicting death or

serious bodily harm. The robber with the unloaded or toy gun is not nice—is guilty in fact of (simple) robbery—but he is not the dangerous type for whom the greater penalty is reserved." LaFave and Scott, Criminal Law 703 n.67 (1972).

■ Turning to the facts in the instant case, we do not find the evidence sufficient to support the jury's determination that this toy, plastic pistol, which was introduced in evidence, was used as a dangerous weapon or was capable of such use under the present facts. As we have noted, the defendant simply demanded money from the cashier while pointing the toy pistol at her. He did not hold the instrumentality close to her person nor did he strike or offer to strike her. Following our reasoning in *Greer*, defendant's conviction must be reversed and, as defendant requests, reduced to the crime of robbery.

Defendant's final contention is that he was denied a fair trial as a consequence of certain improper comments made by the prosecutor during closing arguments.

■ ■ He argues first that the prosecutor improperly indicated that he was a liar by suggesting to the jury that none of the witnesses except defendant had any interest in lying and that he later insinuated the same thing by characterizing the State's witnesses as "honest people." The defendant did not object to either of these remarks at trial, and by failing to do so he has waived any claim of error with respect to them. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Jones* (1979), 70 Ill. App. 3d 338, 387 N.E.2d 1010.) Moreover, even if we were to assume that these remarks were improper, we would not find that defendant was deprived of a fair trial because of them. In view of the strength of the State's case, we would be unable to find that the jury's verdict would have been different had the remarks not been made. *People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7.

Defendant next argues that he was prejudiced by certain comments of the prosecutor which, he feels, in effect, told the jurors that they had to find the toy revolver dangerous merely because it was displayed to the cashier. Considering our disposition of defendant's armed robbery conviction, we need not address this issue.

We, therefore, reverse the judgment of conviction of defendant for armed robbery and remand the cause to the Circuit Court of Williamson County with directions to enter judgment of conviction against defendant for robbery and to impose an appropriate sentence thereon.

Reversed; remanded with directions.

KASSERMAN, J., concurs.

Mr. PRESIDING JUSTICE JONES, dissenting:

Our supreme court has recently held that a fingernail clipper could be a dangerous weapon within the purview of the armed robbery statute. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) In so doing they reaffirmed the following rule from *People v. Dwyer* (1927), 324 Ill. 363, 155 N.E. 316:

> " 'Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case.' " 73 Ill. 2d 192, 202, 383 N.E.2d 164, 169.

If an instrument as small and innocuous as a fingernail clipper can support a jury finding of "dangerous weapon" then the majority is surely in error in setting aside the finding of the jury in this case that a heavy plastic, realistic, toy gun is, as a matter of law, not a dangerous weapon. So surely are they in error that I respectfully dissent.

The defendant here stood close to the victim and could have easily used the heavy plastic pistol to strike or bludgeon her, or to jab her in an eye or elsewhere. It easily constituted a threat far more dangerous than the use of strong-arm force and comprised a danger at least equal to, if not greater than, a fingernail clipper.

To paraphrase *Robinson* and *Dwyer*, the character of the weapon was doubtful, or, the question of dangerousness depended upon the manner of its use, and it was for the jury to determine from a description of the weapon, the manner of its use, and the circumstances of the case whether it was dangerous. This the jury has done, and the majority is unwarranted in setting aside its finding in that regard.

My disagreement with the majority is based upon the purely objective standard for determining whether a weapon is dangerous within the purview of the armed robbery statute, a standard which they advocate. However, the advent today of the majority opinion in this case marks what apparently is only the second instance in Illinois in which a toy or inoperable weapon has been held not to be a dangerous weapon within the purview of our armed robbery statute. The first instance was the Fifth District case of *People v. Richards* (1975), 28 Ill. App. 3d 505, 328 N.E.2d 692. Both cases are at odds with *Robinson* and *Dwyer*.